(78 South. 650)

No. 22772.

TREMONT LUMBER CO. v. MAY, Assessor, et al.

(Jan. 3, 1918. On Rehearing, April 29, 1918.)

*(Syllabus by Editorial Staff.)*

1. PLEADING &#9901;&#8594;32—INCORPORATION OF DOCUMENTS—REFERENCE.

In the Louisiana system of pleading a petition may be composed in part of documents annexed to it and alleged to be made part of it, and their recitals are considered as made in the petition, if the documents are actually made part of or incorporated into the petition, which is not the case where they are merely referred to, as their contents are not then communicated to the court and the adversary party.

2. PLEADING &#9901;&#8594;243 — AMENDMENT—INSUFFICIENT PETITION.

A petition which does not show a cause of action is one on which no judgment can be pronounced, and is, legally speaking, no petition, and hence cannot be amended.

3. PLEADING &#9901;&#8594;279(1)—SUPPLEMENTAL PETITION—BEGINNING SUIT BY FILING.

Where a cause of action is stated for the first time in a supplemental or amended petition, the filing of the supplemental petition must be considered to be the beginning of the suit, and such supplemental petition must be served on the defendant, and delays for answering allowed as in case of an original petition.

4. INJUNCTION &#9901;&#8594;163(1)—DISSOLUTION—INSUFFICIENCY OF BOND.

In an action to contest an assessment, where the contestant's bond is insufficient in amount, injunction must be dissolved.

5. TAXATION &#9901;&#8594;609 — CONTEST OF ASSESSMENT—INJUNCTION.

Injunction against collection of taxes being merely ancillary to the Louisiana suit to contest the assessment, there is no ground for injunction when the suit to contest has not been filed in time.

6. TAXATION &#9901;&#8594;610 — CONTEST OF ASSESSMENT — INJUNCTION — PAYMENT OF UNCONTESTED TAXES.

Under the Revenue Law (Act No. 170 of 1898), there is no ground for injunction against collection of taxes in suit to contest the assessment until the uncontested part of the taxes has been paid and the collector's receipt produced.

7. TAXATION &#9901;&#8594;610 — CONTEST OF ASSESSMENT—INJUNCTION—TENDER OF UNCONTESTED TAXES.

Where a lumber company contesting an assessment tendered the amount of taxes not contested by it on condition that a receipt in full be given, such tender was a pretense, and futile to give the company a right to injunction against collection of taxes in its suit contesting the assessment.

8. INJUNCTION &#9901;&#8594;148(1)—INSUFFICIENCY OF BOND.

Where the insufficiency of the bond given by the owner of property contesting an assessment thereof is not shown to have been the result of error or omission, Act No. 112, of 1916, allowing a litigant to furnish a new bond when the one furnished is insufficient in amount or incorrect by reason of error or omission, has no application.

9. TAXATION &#9901;&#8594;609 — CONTEST OF ASSESSMENT — INJUNCTION AGAINST SALE — RULE NISI.

Under the Revenue Law, § 56, in suit to contest an assessment, injunction against sale of the property was properly dissolved where its issuance was not preceded by a rule nisi.

10. TAXATION &#9901;&#8594;611(8) — CONTEST OF ASSESSMENT—PENALTY.

A penalty on the uncontested part of taxes, under the Revenue Law, § 56, requiring that the party contesting an assessment, if defeated, must be condemned to pay, as attorney's fee, 10 per cent. on the amount of taxes, should not be imposed in case of doubt, whether plaintiff made tender of the uncontested part of the taxes unconditionally or conditionally.

O'Niell, J., dissenting.

*(Syllabus by the Court.)*

On Rehearing.

11. PLEADING &#9901;&#8594;48—PETITION—SUFFICIENCY.

A petition may disclose a cause of action, though open to the objection that its allegations are not, in some respects, sufficiently full or specific to furnish the defendant with information to which he is entitled.

**12. PLEADING ☞307—REFERENCE TO ANNEXED DOCUMENT.**

Where a document alleged to be annexed to, and made part of, a petition is not thereto annexed and filed, a court will determine from the allegations of the petition itself whether it discloses a cause of action; but, though it be of opinion that no cause of action is thus disclosed, it may, at any time prior to the maintenance of an exception of no cause of action, allow plaintiff to amend by filing the missing document, or otherwise by supplementing general allegations and supplying omissions therein.

**13. PLEADING ☞234—ORDER OF AMENDMENT—PERMISSION TO FILE.**

Where, in maintaining an exception of vagueness of allegation, a trial court orders a plaintiff to amend his petition, such plaintiff does not require the permission of the court to file a petition complying with its order.

**14. STATUTES ☞121(6) — TITLE — CONSTITUTION—TAXATION.**

The single object of Act No. 170 of 1898 is to obtain a revenue for the state by taxation, and section 56, in making provision against obstructions to its accomplishment by improvident injunctions, is germane to that object, and hence is not repugnant to article 31 of the Constitution, declaring that every act shall have but one object, which shall be expressed in the title.

**15. PLEADING ☞228 — EXCEPTION—AMENDMENT.**

The law requires a suit by a tax debtor, contesting the action of a board of review in raising his assessment, to be instituted prior to November 1st of the year in which the assessment is made, and where a suit making such contest is instituted and the proper parties cited prior to that date, and an exception of no cause of action, leveled against it, is overruled, the fact that, by order of court, maintaining an exception of vagueness, the petition is afterwards amended, affords no ground for maintaining an exception of prescription.

**16. INJUNCTION ☞148(1)—NEW BOND.**

Though by Act No. 112 of 1916 a taxpayer who has enjoined the collection of a tax is allowed two days within which to furnish a new or· additional bond, at any time prior to judgment, and after notice of complaint, by the collector, of the insufficiency of the bond furnished, and though he may receive such notice only upon the day upon which the motion to dissolve the injunction is filed and tried, yet if he then fails either to tender a new bond or to claim the delay to which he is entitled, and does not thereafter make such tender, he will be held, on the appeal from the judgment dissolving the injunction, to have lost that privilege.

**17. TAXATION ☞607—COLLECTION—INJUNCTIONS—STATUTES.**

The provisions of the Code of Practice, authorizing and requiring the issuance of injunc-

tions in the cases therein specified, do not control those of the later act, No. 170 of 1898, prohibiting the issuance of injunctions restraining the collection of taxes, save upon the conditions therein prescribed, and repealing all laws in conflict or inconsistent therewith.

**18. TAXATION ☞609—COLLECTION—INJUNCTION—PAYMENT—RULE NISI.**

In order to entitle a tax debtor to an injunction restraining the collection of a portion of the taxes assessed against him, he must show that he has paid the portion admitted to be due, and exhibit and file the receipt therefor. In order to entitle a tax debtor to enjoin the collection of a tax assessed against him, he must proceed against the collector by rule nisi, and obtain the order for the injunction after the hearing of the same.

**19. INJUNCTION ☞163(2)—DISSOLUTION.**

The doctrine, or rule, that a court will not dissolve an injunction if it is apparent that the party in whose favor it was issued would immediately be entitled to another such writ, has no application in cases in which it appears that the party would not immediately, or perhaps not at all, be so entitled.

Appeal from Fifth Judicial District Court, Parish of Jackson; Cas Moss, Judge.

Suit by the Tremont Lumber Company against A. H. May, Assessor, and others. From a judgment dismissing suit and dissolving injunction, plaintiff appeals. Judgment annulled in part, affirmed in part, and case remanded for trial on the merits.

Stubbs, Theus, Grisham & Thompson, of Monroe, for appellant. Julius T. Long, of Winnfield, for appellee Jones.

PROVOSTY, J. The petition in this case reads as follows:

"To the honorable the judge of the Fifth judicial district of Louisiana holding sessions of court in and for the parish of Jackson: The petition of the Tremont Lumber Company with respect represents: (1) That it is a corporation organized and chartered under the laws of the state of Louisiana, with its domicile at Tremont, in the parish of Lincoln and state of Louisiana, with Samuel J. Carpenter as its president. (2) That it is the owner of a large amount of timber and cut-over lands and other property situated in your said parish of Jackson and state of Louisiana. (3) That on the 2d day of September, 1915, the State Board of Equalization of the state of Louisiana, in legal session in the city of Baton Rouge, which is the domicile of said board and the capital of the state of

Louisiana, passed a resolution and adopted a report, or supplemental report, fixing the classification of timber lands for the purpose of assessment for the year 1916, and fixing the value of each classification. (4) That prior to the 1st day of April, 1916, and within the time fixed by law for rendering property for assessment, your petitioner returned all of its property, including its timber and timbered lands, to the assessor of your said parish of Jackson, and that said assessment as rendered by your petitioner, including the classification of its timber, was duly accepted by said assessor, as is more fully shown by the original assessment sheets in the possession of said assessor, which are made a part of this petition by reference. (5) That the classification of your petitioner's said timber as given in to said assessor and as accepted by him was a correct classification and the legal assessment, and represented the true amount of the merchantable timber on said land; and, as above alleged, was accepted by said assessor, viz. A. H. May, as a correct rendition of the said property for assessment as shown by said assessment sheets rendered and sworn to in accordance with law. (6) That on or about the 17th day of June, 1916, the police jury of your said parish of Jackson, while sitting in its capacity as a board of reviewers, over the protest and objection of your petitioner, changed the classification of a portion of the merchantable timber on a portion of the lands, and ordered a material change and raise in said classification, which materially increased petitioner's assessment; and, while the increase in assessment for the year 1916 will not amount to an actual increase in taxes that would have to be paid by your petitioner to the sum of two thousand dollars ($2,000), it is materially in excess of one hundred dollars ($100), and, if the classification is permitted to remain as ordered fixed by said police jury, the increased taxes for the year 1916 and subsequent years will be greatly in excess of the sum of two thousand ($2,000) dollars. (7) That the rendition and classification as made and returned by your petitioner, and the assessment made thereon by said A. H. May, was correct, and that the classification and assessment resulting therefrom, as ordered by the police jury as a board of reviewers, is excessive and illegal, and should be reduced to the classification and assessment as returned by your petitioner. (8) That petitioner appeared before said board of reviewers, and in the manner required by law asked that the assessment as originally made be maintained. These premises considered, your petitioner prays that A. H. May, tax assessor of the parish of Jackson, W. S. Jones, sheriff and tax collector of said parish of Jackson, and the police jury of said parish of Jackson, through its president, W. T. Hawthorn, be served with a copy of this petition, and cited to answer same in accordance with law, and on final trial had that the increase ·in classification ordered made by said police jury be annulled, and your petitioner's assessment reduced, both in classification and amount,

as rendered and accepted by said assessor, and that said sheriff and tax collector be enjoined and restrained from collecting or attempting to collect any taxes in excess of the classification and amounts as rendered by your petitioner for assessment. Petitioner prays for all other needful orders and decrees in the premises and for general relief."

It will be noted that the object of this suit is to have the court pass upon the correctness of the classification of certain lands, and yet that these lands are not described otherwise than by the statement that they are timber and cut-over lands, and belong to the petitioner, and are situated in the parish of Jackson, and that they and their classification "is more fully shown by the original assessment sheets· in the possession of the assessor, which are made part of this petition by reference." The classification made by the board of reviewers is not alleged even "by reference."

[1] An exception of no cause of action was filed, and overruled, and plaintiff was allowed to amend. The exception should have been sustained. In our system of pleading, form is not sacramental; so that a petition may be composed in part of documents annexed to it and alleged to be made part of it. Recitals contained in documents incorporated into a petition in that manner are considered as made in the petition. But this is and can be true only when the documents are actually made part of, or incorporated into, the petition. And they are evidently not thus incorporated when they are merely referred to; or, as the petition in this case expresses it, are merely "made part by reference." Their contents are not then communicated to the court and to the pleader's adversary. Nothing is then stated upon which the court can act; for, evidently, a court can act only upon what is in the record, not upon something that can be discovered or ascertained only by going to consult some papers said to be in some assessor's or other office.

In this case, for pronouncing judgment in favor of plaintiff on the face of the petition the court would have to decree the classification submitted by plaintiff to the assessor to have been right without knowing what lands were in question and what the classification was, and to decree the classification made by the board of reviewers to have been wrong without knowing what it was.

Far from sanctioning or tolerating such looseness as this, our Pleadings Act (Act 300, p. 611, of 1914) is, on the contrary, very specific that—

"the plaintiff in his petition * * * shall, so far as practicable, state each of the material facts upon which he bases his claim for relief in a separate paragraph;"

and that the defendant shall—

"either admit or deny specifically each material allegation or fact contained in plaintiff's petition."

[2] The amendment should not have been allowed. A petition upon which no judgment can be pronounced does not show a cause of action; and a petition which does not show a cause of action is, legally speaking, no petition, and hence cannot be amended. For definition of a petition, see American Sugar Refinery Case, 138 La. 1014, 71 South. 137. In Abadie v. Berges, 41 La. Ann. 283, 6 South. 529, this court said: "The court is powerless to authorize an amendment which would insert a cause of action when none was previously averred." In State v. Hackley, Hume and Joyce, 124 La. 854, 50 South. 772, the court said: "Unless a cause of action is alleged there is no suit, and hence nothing to amend." See these cases quoted with approval in Godchaux v. Hyde, 126 La. 187, 52 South. 269.

[3] Where a cause of action is stated for the first time in a supplemental or amended petition, the filing of the supplemental petition must be considered to be the beginning of the suit; the suit must be considered as dating only from such filing, and not from the filing of the original petition; and the supplemental petition must be served upon the defendant, and the delays for answering must be allowed as in the case of an original petition. Hart & Co. v. Bowie, 34 La. Ann. 323; Raymond v. Palmer, 35 La. Ann. 281; Ursuline Nuns v. Depassau, 7 Mart. N. S. 645; 1 C. J. 1159. In the instant case the supplemental, or amended, petition was not served on defendants; defendants were never cited to answer it; they duly excepted on that ground to being required to answer it.

[4] But the serving of it would have been of no avail, as the date of its filing was the 6th of November, five days after the expiration of the delay allowed by law for the filing of suits of that character. "The action to test such correctness [the correctness of an assessment] shall be instituted on or before the first day of November of the year in which the assessment is made." Section 26 of Act 170, p. 346, of 1898. The defendants duly excepted on that ground also.

Plaintiff's suit was not at first accompanied by an injunction, but before it could be tried the property was advertised to be sold to satisfy the taxes assessed against it on the classification made by the board of reviewers, and an injunction was then sued out.

Defendants moved to dissolve it on the ground that in obtaining it the several requirements prescribed by the Revenue Law (Act 170, p. 346, of 1898, § 56) were not observed, to wit:

"No injunction restraining the collection of any tax or taxes shall be issued by any court unless a bond shall first be given, by the taxpayer enjoining, with good security for an amount equal to that of all taxes, interests, penalties and costs of the amount of taxes contested, and fifty per cent. additional thereon included, and no injunction shall issue except to enjoin the collection of that portion of the tax which may be in contest, and no injunction shall issue against the collection of that part or portion in contest until the taxpayer shall have produced and filed the tax collector's receipt showing that the taxpayer has paid that portion of the tax * * * not in contest, and

which the taxpayer acknowledges to be due. No injunction against the collection of taxes or any part or portion thereof shall issue except after the issuance of a rule nisi, to be served on the tax collector, returnable in three days. Said rule shall be tried on the fourth day after service, summarily and by preference, and the injunction shall only issue after judgment making the rule absolute and then only for such portion or part of the tax in contestation as hereinbefore provided."

[5-8] The amount of the taxes enjoined exceeded largely the amount of the bond given by plaintiff. Plaintiff would seek to escape the consequence of this discrepancy by invoking the principle that an injunction will not be dissolved where there is ground for injunction, and the sole effect of the dissolution would be to subject the litigant to the trouble or expense of suing out another injunction; and by invoking Act 112 of 1916, by which a litigant is allowed to furnish a new bond when the one furnished "is insufficient in amount or incorrect by reason of errors or omissions."

The rule is that where, in a tax contesting case like this, the bond is insufficient in amount, the injunction must be dissolved. Paepcke Leight Lbr. Co. v. Clack, Tax Col., 137 La. 397, 68 South. 739; Howcott v. Smart, 125 La. 50, 51 South. 64. Moreover, the injunction being merely ancillary to the suit to contest the assessment, there can be no ground for injunction when the suit to contest has not been filed in time; and the suit in this case was not filed in time. Again, there can be no ground for injunction until the uncontested part of the taxes has been paid, and the tax collector's receipt for it produced; and while plaintiff alleged in the supplemental petition that payment of this uncontested part had been tendered and refused, plaintiff made no effort to prove that fact on the trial, although it was specifically denied in the answer of defendants. Defendants' counsel says that the only tender made was on the condition that a receipt in full should be given; and we are inclined to believe it, for why, else, refuse to accept the money. We need hardly add that a tender so conditioned would have been nothing more than a mere pretense at a tender, and futile.

[9] The insufficiency of the bond in this case is not shown to have been the result of error or omission; hence said Act 112 of 1916 can have no application.

[10] Another clear ground why the injunction was properly dissolved is that its issuance was not preceded by a rule nisi. How the law on this point could be more stringently worded than by the above transcribed statute we cannot imagine. Plaintiff would seek to escape by saying that the motion to dissolve on that ground was filed too late, it having been filed after issue had been joined on the merits. No reason is given why this peremptory ground of dissolution, almost if not quite of the nature of a law of public order, should be considered to have been waived by its not having been urged in the answer; and we can conceive of none.

In cases of this kind, contesting taxes, section 56 of the Revenue Law requires that the contesting party, if defeated in the suit, must be condemned to pay, as attorney's fees, 10 per cent. on the aggregate amount of the taxes and penalties involved in the suit. Upon the contested part of the taxes and penalties plaintiff is clearly liable to this penalty. Whether plaintiff is liable to it upon the uncontested part depends upon whether a tender of this uncontested part was made unconditionally, or only, as stated by counsel for defendants, on the condition that a receipt in full should be given, or on any other condition. The record leaves the court in doubt on that point, and a penalty should not be imposed in doubt. Therefore for determining whether this 10 per cent. penalty should be imposed upon the basis of the entire amount of the taxes and penalties due by plaintiff or only of the uncontested part, we shall remand the case for further trial.

The judgment appealed from is therefore affirmed, except in the matter of the attorney's fees, as to which it is remanded for further trial, with instructions that judgment be rendered against the plaintiff in favor of the defendants for 10 per cent. as attorney's fees, upon the basis of the contested part of the taxes and penalties herein, and, in the event the tender made by plaintiff to the tax collector was on the condition that a receipt in full should be given, or was made otherwise than unconditionally, then that judgment be also rendered for such attorney's fees upon the basis of the uncontested part of said taxes and penalties, and that the plaintiff pay all the costs of this suit.

O'NIELL, J., dissents from the ruling that the plaintiff's petition did not set forth a cause of action.

On Rehearing—Statement of the Case.

MONROE, C. J. The original petition in this case having been reproduced in the opinion heretofore handed down, we now merely summarize those of its allegations which are immediately pertinent to the questions presented for decision, as follows, to wit:

That plaintiff owns a large amount of timbered and "cut-over" land, in Jackson parish (which, however, is not otherwise identified or described); that in September, 1915, the State Board of Equalization fixed the classification of timbered lands, and the value of each classification for the purposes of the assessment for the taxes of 1916; "that prior to the 1st day of April, 1916, and within the time fixed by law for rendering property for assessment, your petitioner returned all of its property, including its timber and timbered lands, to the assessor of your said parish of Jackson, and that said assessment as rendered by petitioner, including the classification of its timber, was duly accepted by said assessor, as is more fully shown by the original assessment sheets in the possession of said assessor, which are made a part of this petition by reference; that the classification of your petitioner's said timber, as given in by your petitioner to said assessor and as accepted by him, was a correct classification and legal assessment, and represented the true amount of the merchantable timber on said land"; and that "same was sworn to in accordance with

law"; "that on or about the 17th day of June, 1916, the police jury, * * * while sitting as a board of review, over the protest and objection of your petitioner, changed the classification of a portion of the merchantable timber on a portion of the lands, and ordered a material * * * raise in said classification, which materially increased petitioner's assessment, * * * and, if the classification is permitted to remain as fixed by said police jury, the increased taxes for the year 1916 and subsequent years will be greatly in excess of * * * $2,000"; that the rendition and classification, as made and returned by your petitioner, and the assessment, made thereon by said A. H. May, were correct, and that the classification and assessment, * * * as ordered by the police jury as a board of review, is excessive and illegal, and should be reduced to the classification as returned by your petitioner; that petitioner appeared before said board of review, and, in the manner required by law, asked that the assessment as originally made be maintained.

"Wherefore petitioner prays that the assessor, the collector, and the police jury, through its president, be cited, and that the increase in classification ordered made by said police jury be annulled, and your petitioner's assessment reduced, both in classification and amount, as rendered, and accepted by said assessor, and that said sheriff and tax collector be enjoined and restrained from collecting, or attempting to collect, any taxes in excess of the classifications and amounts as rendered by your petitioner for assessment."

The petition was filed October 30, and service was accepted by the two first-mentioned defendants, and made in person on the president of the police jury on the same day. Defendants, on November 6 following, filed a pleading, setting up, in the same instrument, the following grounds of exception, to wit: That the petition discloses no cause of action; that plaintiff's right to bring such an action became prescribed within 10 days after the police jury raised the assessment complained of and adjourned, and expired prior to October 30, and, especially, at the moment the assessment rolls were filed with the tax collector; that the inclusion of the assessor among the defendants was an improper joinder of parties; that the allegations of the petition are so vague and indefinite as to render a specific answer impossible, and that the suit should be stricken from the docket "on the ground that it is no

suit and does not disclose any cause of action"; that, in the event some of the foregoing pleas and allegations are not sustained, plaintiff should be ordered to amend its petition by setting forth each piece of land upon which it is alleged that the assessment is too high. The minutes of the court show that on February 16, 1917, the exception of no cause of action was overruled, and the exception of vagueness maintained, and plaintiff ordered to amend its petition; which was followed on May 7 by an order fixing May 14 as the day upon which the amended petition should be filed; and it was filed on May 12, and reads, in part, as follows:

"Now into court comes * * * petitioner, * * * and, in obedience to the order * * * rendered herein * * * to be more definite as to the description of the property on which the assessment * * * was raised, * * * with leave of the court begs to amend its original petition filed herein as follows:

"(1) At the close of paragraph 4 in the original petition, * * * petitioner asks to add the following words: 'Which original assessment, as rendered by your petitioner. is attached hereto and made part hereof for full and complete certainty as to the classification placed on the said property by your petitioner and accepted by the said assessor.'

"(2) At the end of the 6th line of paragraph 6 of the original petition, * * * and after the word 'assessment,' your petitioner asks to amend the said paragraph by inserting the following words: 'Certified copy of the ordinance of the police jury, sitting as a board of review, changing and increasing the classification of the timber belonging to your petitioner, and describing the land on which it is situated, and the original and supplemental assessment sheet, made by the assessor thereon, are hereto attached and made part hereof, for full and complete certainty as to the increase in grade of classification made by the said police jury while sitting in its capacity as a board of review.'

"(3) Your petitioner attaches the documents referred to herein to this amended petition, and asks that the original petition be amended as herein indicated, and that the documents herewith be made a part of the original petition filed herein. As thus amended, your petitioner re-adopts the original petition and * * * the prayer," etc.

The documents thus referred to were, accordingly, filed, and on May 14 plaintiff caused judgment by default to be entered. On May 16 defendants moved to set aside the default, and that the suit be dismissed on the ground that the amended petition had not been filed or served at the proper time; on May 30 plaintiff filed a supplemental petition, setting forth the institution of the suit on October 30, 1916, and alleging that thereafter and prior to January 1, 1917, when the taxes of 1916 became delinquent, it had tendered to the collector the full amount of the taxes due to the state, the parish, and the other—

"subdivisions of the parish of Jackson, including all special taxes of every nature and kind, and demanded a receipt for the payment of the taxes due and as shown by its assessment duly given, in and all in accordance with plaintiff's original petition and subsequent bill of particulars, which tender was refused, and said * * * collector refused to issue the receipt or other evidence showing the payment of said taxes, and refused to cancel said taxes on the assessment roll; that, notwithstanding your petitioner has tendered the full amount of taxes due by it, the said * * * collector has advertised the whole of your petitioner's property in the parish of Jackson for sale for taxes, which property is worth more than $100,000," etc.;

and praying for a preliminary injunction prohibiting the threatened sale; which writ was issued, on a bond for $1,000 enjoining the collector "from proceeding further with said proposed sale," though we fail to find the order of court authorizing it or fixing the amount of the bond. On June 4 defendants filed a pleading which reads and may be stated in substance as follows, to wit:

"Now into court come * * * defendants, * * * reserving all their rights under pleas of prescription, exception of no cause of action, and alternative plea to dismiss plaintiff's suit on the ground of vagueness, * * * all of which were overruled by the court except the alternative plea as to vagueness, and on which, on February 17, 1917, the court ordered plaintiff to amend, and now alleges, moves, and prays that the pretended amended petition filed herein by plaintiff, on May 12, 1917, and the so-called injunction against the sale of property, * * * and the entire proceedings, including original petition of plaintiff, be and should be dismissed and stricken from the records of this court for the following causes and reasons:"

That the pretended amended petition was filed without authorization of court, and defendant has not been cited to answer it; that it attempts to amend the original petition "as to what

the suit is about, when the original petition was totally silent as to what this suit was about or as to the specific things in controversy," and therefore defendants were entitled to service and citation; that it does not answer the requirements of the court, is too vague and indefinite and uncertain, "and unusual to the manner of pleadings adopted by the laws and courts of Louisiana," and should, for that reason, be stricken from the records; that the pretended attached copies of the raise made by the police jury and the return of assessment made by plaintiff are not to be considered proper allegations in a petition; that defendant is entitled to neat, specific, allegations, made in such a manner that they can be conveniently and intelligently answered; that the petition for injunction was filed as a supplement to the original petition, but with no order of court authorizing it, and should therefore be dismissed and stricken out; that the pretended supplemental injunction suit was filed too late, plaintiff having waived its right by permitting its property to be advertised to within two days of the sale; that the time for filing amendments setting forth the matters involved in the suit expired long before any proper amendment was served; and defendants deny that any amendment has ever yet been legally allowed to be filed or served. They pray that all of plaintiff's proceedings, including original, amended, and supplemental petitions, be dismissed.

The minutes of June 4 show that the motion to set aside the default and the motion and exception last above mentioned were taken up, considered, and, in part, disposed of as follows:

"Motion to dismiss. Exception of no cause of action and plea of prescription as to all proceedings in this case, and particularly to both amended petitions, filed by defendants.

"Whereupon the trial of said motion was taken up, tried, and sustained, so far as prematurity of default is concerned, and default set aside, and further exception as to amended petition not having fully complied with the order of court, it is overruled and amended petition allowed, and other exceptions are continued until June 8, 1917."

The minutes of June 8, read:

"The exception filed herein on June 4, 1917, is overruled in toto, and the amended petition and injunction are allowed."

On the same day (June 8) defendants filed an answer and reconventional demand, in which latter they set up a claim for damages and attorney's fees. On June 25 they filed a motion to dismiss the suit and dissolve the injunction upon the following grounds, to wit: That all suits for the reduction of assessments must be filed before November 1 of the year in which the assessment is made, and that no such suit was filed by plaintiff; that the law provides that no injunction against the collection of taxes, or any part or portion thereof, shall issue except after the issuance of a rule nisi, to be served on the tax collector, returnable in three days, and after judgment making the rule absolute, and then only for such portion of the tax as may be in dispute, and upon the production of a receipt for the portion not in dispute, and that none such shall issue unless a bond be first given, with good surety, for an amount equal to that of the tax enjoined, with interest, penalties, and costs, etc.; but that the injunction herein was issued without rule, notice, or receipt, and upon a bond for an amount less than the amount of the tax enjoined. The prayer is that all the proceedings be dismissed, the injunction dissolved, and plaintiff condemned to pay attorney's fees to the amount of 10 per cent. upon the aggregate of the taxes; the collection of which is enjoined and interest and penalties, etc. The tax collector then filed an amended answer; plaintiff filed a motion to strike out the motion last filed by defendants; and the parties went to trial on the motion and counter motion (though, on June 14, the case had been set down for June 25, on its merits, "without prejudice"), and after the taking of certain testimony showing that the tax rolls were filed with the collector on October 30, 1916, at about 12:30 p. m., and that the petition in this suit (and in two other suits similar in character) had been filed an hour or two later, on the same day; and, after hearing the parties, the trial judge, "being of the opinion that the motion to dismiss the suit and dissolve the injunction was well founded, and that the demands therein contained should be allowed," gave judgment as follows:

"It is ordered, adjudged, and decreed that plaintiff's suit be and is hereby dismissed, its injunction dissolved, at its cost, and that the plea of prescription, made in said motion by said defendants, be sustained, and that plaintiff pay all penalties provided by existing laws, and that the said tax assessor, sheriff, and police jury of Jackson parish do have and recover from plaintiff the sum of 10 per cent. as attorney's fees on the sum of $14,674.93 of taxes whose collection was enjoined by said writ of injunction."

Plaintiff has appealed, and defendants have answered the appeal, praying that the judgment be amended so as that it shall decree and make it certain that the award of 10 per cent. in favor of the assessor and collector is for attorney's fees which are to be collected by those officers and paid over to the attorney; that, should this court fail to affirm the judgment as rendered, it should sustain the exceptions of no cause of action and prescription, as originally filed, on November 6, 1916, and as filed on June 4, 1917.

### Opinion.

[11] A petition discloses a cause of action when its allegations of fact, if taken as true, would entitle the petitioner to the relief prayed for; and, for the purposes of an exception of no cause of action, such allegations are taken as true. In the instant case the relief prayed for by plaintiff in its original petition was (as we have stated) that—

"the increase in classification ordered made by said police jury be annulled, and your petitioner's assessment reduced, both in classification and amount, as rendered, and accepted by said assessor, and that said sheriff and tax collector be enjoined and restrained from collecting or attempting to collect any taxes in excess of the classifications and amount as rendered by your petitioner for assessment."

The allegations upon which that prayer is based are, in substance, that plaintiff made a correct classification and valuation of its timber and timbered lands, and made a sworn return of the same to the assessor, prior to April 1, 1916, as required by law; that the assessor accepted the return so made as correct, "as is more fully shown by the original assessment sheets, which are made part of this petition by reference"; that the police jury, sitting as a board of review, over plaintiff's protest, raised the classification of a portion of the merchantable timber on a portion of its lands, thereby increasing the assessment, which, as thus increased, is excessive and illegal; wherefore it prays, etc.

The case thus stated appears to us, upon further consideration, to be that for which provision is made by Act 182 of 1906, § 3, p. 332, in declaring that each taxpayer (parish of Orleans excepted) shall make a return of his property for assessment before April 1 of each year, in default of which, for any cause whatever, he shall be estopped from contesting the assessment as filed by the assessor; and Act 170 of 1898, in declaring that it shall be the duty of the assessor to assess all property subject to taxation and lying within his parish at its actual cash value, and lay his lists before the board of review; that it shall be the duty of such board to scrutinize the lists, and either approve them, or disapprove after notifying and hearing the assessor, as they may think proper, the valuation as fixed by the board to be final unless otherwise ordered by the courts; that it shall be the duty of the board to receive and hear the taxpayer who desires to contest the valuation of the assessors, and to correct such valuation contradictorily with the assessor if found to be incorrect, and that, if the claims of the taxpayer be not approved, he may seek relief in the courts; that no valuation by the assessor shall be increased without notice to the taxpayer, who shall have his action before the courts in the event of an adverse ruling. but that all such suits shall be instituted prior to November 1 of the year in which the assessment is made, and that the tax collector shall be made a party thereto.

The exception of no cause of action was

based, as we understand the argument of defendants' learned counsel, upon the ground that the petition did not, of itself, identify the property, the increased assessment of which it sought to have annulled, and failed to state the amount to which it desired the court to .reduce the assessment; that it would therefore be impossible to render the judgment as prayed for therein, and that the court would not go outside of the pleading, which, alone, had been filed in the case, for the information necessary to enable it to discharge that function. It will be observed that defendants, in the alternative, interposed the exception of vagueness, and prayed the court, in the event of its not sustaining some other of their exceptions, to order plaintiff to amend its petition, and that the court overruled the exception of no cause of action, and, without specifically noticing the exceptions of prescriptions and misjoinder, sustained that of vagueness, and ordered plaintiff to amend, which plaintiff did by filing its return and the assessment sheet as prepared by the assessor and amended by order of the board of review, thereby furnishing a description of the property involved, showing both the original and increased assessments, and hence showing the amount to which plaintiff prayed that the increased assessment be reduced. That ruling, we think, was correct. The petition, of itself, sets forth a cause of action (though not with the particularity that defendants had the right to demand) in alleging that plaintiff had made a sworn return of its property prior to April 1, 1916 (that is to say, in the manner and within the time required by law); that it had been accepted and acted on by the assessor, and was, in fact and in law, correct; and that, by order of the board of review, the classification and assessment, as so returned and acted on, had been changed to a higher classification, which was incorrect, and to a consequent increased assessment, which, being also incorrect and excessive, was illegal. Pretermitting the questions of estoppel and presumption which are said to arise from plaintiff's alleged failure to make the proper return and to bring this action before November 1, 1916, its cause of action arose from the (alleged) error of the board of review in altering, to its prejudice, a correct classification and assessment of its timber, being the act of the defendant board, of which it was bound to have knowledge, and the official evidence of which was alleged to be, at that time, in the possession of its codefendant, the assessor—the facts in that connection, as we understand them, being that plaintiff's return was delivered to the assessor, who based his assessment thereon, and laid the same before the board of review; that the board ordered the assessment to be increased, which having been done, the assessment sheet, with both the original and the increased assessments showing thereon, as delivered, either by the assessor or the board, to the collector, the delivery last mentioned having been made on the day, and an hour or two before, this suit was instituted, and two days before the expiration of the delay to which plaintiff was entitled for its institution. Defendants were therefore in rather a better position, with the evidence of their own acts in their possession, to know the facts upon which plaintiff is bound to rely for the success of its suit than was the plaintiff, and it might very well have happened that it would have been impossible for plaintiff to have made any other allegations than those which it did make; as, for instance, let us suppose that the officer in charge of such matters, having made the proper return for assessment, and having appeared before the board of review to contest an increase, had gone away, or had died, and that, at the last moment of the last day of the delay allowed for bringing suit, his successor had learned that the board has in-

creased the assessment upon 50 out of 100 tracts of land, but had not learned the amount of the increase or the particular tracts affected, what more could he do—having no time to obtain that information—than to file a petition setting forth that a return had been made (stating the manner and time); that it had been adopted as the basis of the original assessment; that the assessment represented the true value of the property; that an appearance had been made before the board contesting a proposed increase; and that, at the last moment, an increase had nevertheless been made, but that he was uninformed as to the amount or the particular property to which it applied, and, for the further information of the court upon that subject, made the assessment sheet itself a part of his petition. The law requires the board to notify the assessor of its action in such cases, but it does not require it or the assessor to notify the taxpayer.

[12, 13] Returning then to the concrete case now under consideration, the trial judge, finding, as we assume, that the petition disclosed a cause of action, though imperfect in its details, overruled the exception of no cause of action, and, maintaining the exception leveled at the imperfection, ordered plaintiff to amend the petition accordingly, which was done by the filing of the missing assessment sheet and the return, a ruling authorized by law and sanctioned by the decisions of this court. In fact, whilst it is well settled that no amendment can be allowed after an exception of no cause of action has been sustained, and while there is a certain limit beyond which a court cannot go in allowing amendments after issue joined, the matter of allowing amendments before such action has been taken is practically left to the discretion of the trial judge, though it would appear that where a plaintiff claims less than is due him, or fails to claim interest upon his debt, he may set up his belated claim by

amendment, as a matter of right. C. P. 156, 157. If there is any case in our books where a plaintiff has been denied the right to amend a petition imperfectly stating his cause of action, when leave to amend has been asked, before the court has otherwise acted in the matter, or where, upon the hearing of an exception of no cause of action, he has been denied the right to produce documents alleged to have been annexed to and made part of the petition, but not so annexed, it has not been called to our attention.

Police Jury v. Mahoudeau, 27 La. Ann. 224, was a suit founded upon notes secured by mortgage, which appears to have been dismissed by the trial judge for "insufficiency of description of the instruments sued on," which instruments, though alleged to have been made part of the petition, were not filed therewith, but, as we infer, were produced on the trial of the exception. In reversing the judgment appealed from, the court said:

"If the description were materially defective, the plaintiffs should have been allowed, under the circumstances, an opportunity to amend before their suit was dismissed. But we are inclined to think that, although the petition is loosely constructed, the documents, being made a part thereof, supply any deficiency therein in relation to their nature and contents, and that 'the only consequence of a failure to file them at the time of filing the petition is' that the defendant may refuse to answer until he has oyer of them.' [Smith Heirs v. Blunt] 2 La. 133; C. P. 175. The acts of mortgage and the notes on which the action is based are sufficiently described to fix their identity and purport, and, being a part of the petition, they, with it, contain a full statement of the cause of action, including an accurate description of the property affected by the mortgage."

In Hewitt v. Williams, 47 La. Ann. 744, 17 South. 269, it appeared that the suit was brought on accounts and notes, which, as we infer, were not alleged to be annexed to, or made part of, the petition, and which were not so annexed, and defendant excepted upon that ground and because the petition gave no sufficient description of such writings, nor of any of the items given in

them, or other description of what they purported to represent; upon which exception the court made the following ruling, to wit:

"It is no cause for the dismissal of the suit that the plaintiff fails to annex documents to the petition. An intelligent cause of action set forth in the petition is sufficient. The defendant, of course, has the right to demand an exhibit of the documents, and, on the failure of the plaintiff to produce them, he will not be required to answer the demand against him, and the dismissal of the suit will be the penalty of plaintiff's failure to produce. * * * In the case at bar the notes are accurately described in the petition, but are not made part of the same; and the statement of the account in the petition is based upon a bank account for money advanced to defendant, placed to his credit, and which he drew out on his own checks, or by checks for supplies drawn by the Hicks Company, Limited, on the order of defendant. He must then have known his exact standing with the bank, and he stands in the same position as one to whom a detailed statement is made. * * * If the notes are produced on the trial and tendered to defendant, he certainly has no cause to complain, as his payment to the holder would be valid extinguishment of the notes."

In Lamorere v. Cox, 32 La. Ann. 1045, being a suit upon a mortgage and certain judicial proceedings, which were alleged to be annexed to the petition but were not so annexed, the court said (inter alia):

"We have, however, no hesitation in stating that where the allegation is formally made that a document, record, or other writing is annexed and made a part of a petition, and it is not so annexed, *nor even filed in evidence, when exception is made* [tried] *to the* cause of action or sufficiency of the petition, * * * it should not be considered as forming part of the petition." (Italics by present writer.)

It was found in the case cited, however, that the allegations of the petition, without the missing documents, disclosed a cause of action, and the judgment, maintaining the exception of no cause of action, was reversed and the case remanded.

In Carroll et al. v. Cockerham et al., 38 La. Ann. 817, plaintiff sued to annul a dation en paiement, alleged to have been made by their father to the prejudice of their légitime, and defendants filed an exception of no cause of action, based upon the ground that the petition did not afford the information whereby the amount of the légitime could be determined. The trial judge ordered that the exception be sustained, unless the plaintiffs should amend their petition in three days, setting forth the amount of their father's debts at the time of his death and of their légitime. The privilege of amending thus granted was objected to by defendants, and the objection was disposed of by this court as follows:

"The exception, in effect, charged that the allegations of the petition were insufficient to justify the relief sought inasmuch as they did not afford the information by which the amount of the légitime could be determined.

"We think, under the circumstances, the ruling was a proper one, and the defendant was not prejudiced thereby. * * * Defendant cites in support of his contentions several decisions of this court. They are not in point; they only go to the extent that, after there has been an unqualified dismissal of the suit on an exception of no cause of action, plaintiff cannot be permitted to amend."

The court then goes on to say that the fixing of the amount of the légitime was, moreover, a matter of proof, and that the allegation that it was due, with certain other allegations, sufficed to authorize the admission of such proof, and hence that the trial judge had erred in sustaining the exception, even conditionally.

In Scruggs v. Endom, 123 La. 894, 49 South. 630, it was said by the court:

"Plaintiff's petition did disclose a cause of action; but it was a cause of action imperfectly and defectively stated. Defendant had the right to object to its vagueness, and to have called on him to amend the same. He did not do so, but reserved his objections until the trial of the case, and then urged them by way of objections to evidence not covered by the pleadings. We think, from a technical point of view, the objections urged were correct; but inasmuch as, by reason of those objections and through evidence introduced in his own behalf, this court has been uninformed upon a question vitally important for just decision upon the rights and obligations of the parties, and matters can be positively established one way or the other, by evidence not difficult of procurement, we have reached the conclusion that, in the interest of

justice, the judgment appealed from should be reversed and the cause remanded to the district court, and reinstated on the docket, to be further proceeded with according to law; the right being granted to plaintiff to amend his pleadings and make his demand more specific under the cause of action declared upon."

It has been held that amendments should be allowed to petitions even after issue joined, where they merely supply omissions in, or amplify the general allegations, or where they tend to the furtherance of justice, and do not retard the case or operate to the injury of the opposing litigant. Jelks v. Smith, 5 La. Ann. 674; Richardson v. Fenner, 10 La. Ann. 600; State ex rel. Southern Bank v. Pilsbury, 31 La. Ann. 9; Payme v. Railroad & S. S. Co., 38 La. Ann. 164, 58 Am. Rep. 174; Scruggs v. Endom, supra; C. P. 819.

The doctrine that the failure to annex a notarial or public act, upon which a suit is founded, to the petition, as required by C. P. 174, does not authorize the dismissal of the suit, but merely relieves the defendant of the necessity of filing his answer until the act is so annexed, and gives him the right to such dismissal in the event of plaintiff's failure to comply with an order of court to produce and file such act, appears to have been first enunciated by this court in Smith v. Blunt, 2 La. 132, and, with the exception of the ruling in Parish v. Municipality, 8 La. Ann. 145, appears to have been uniformly adhered to up to the present time. Hillard v. Taylor, 114 La. 894, 38 South. 594. The trial judge having ordered plaintiff to amend, no further permission for the filing of the petition complying with that order was required. The plea of prescription necessarily fell with the overruling of the exception of no cause of action; for service of citation having been made or accepted by all the defendants prior to November 1, it could have had nothing to rest on save the contention that the original petition disclosed no cause of action, and was not to

be regarded as a suit, within the meaning of the statute requiring such suits as this to be instituted before that date. The trial judge therefore, erred in finally maintaining that exception.

It is said that the petition (called supplemental) upon which the injunction was issued was filed without leave of the court, and we fail to find that any such leave was obtained or that any order was obtained for the issuance of the injunction. As to the necessity for leave to file such a petition, we consider it unnecessary to express any opinion, nor does it matter whether the order for the writ was given, since the writ, in any event, appears to have been issued in entire disregard of several requirements and prohibitions of the law governing the matter, to be found in section 56 of Act 170 of 1898, p. 374, which declares that no injunction restraining the collection of any tax shall be issued save upon a bond for an amount equal to the tax in contest, plus interest, penalties, and costs and 50 per cent. additional; that no such injunction shall issue except to enjoin the collection of that portion of the tax in contest; that none shall issue against such collection until the taxpayer shall have produced a receipt showing that he has paid the portion not in contest, and which he acknowledges to be due; that no injunction against the collection of any tax shall issue until after the favorable determination of a rule nisi, to be served upon the tax collector, made returnable in three days, and tried on the fourth and then only for such portion of the tax in contestation as is provided in the preceding paragraphs of the section.

[14-17] Counsel for plaintiff contend that section 56 of the act of 1898 contravenes article 31 of the Constitution, declaring that a law shall embrace but one object, which shall be expressed in its title. The act in question is entitled:

"An act to provide an annual revenue for the state of Louisiana by the levying of annual taxes upon all property not exempted from taxation, and by prescribing the method of assessing and collecting the same, and of enforcing payment thereof in the several parishes of the state, and setting forth the purposes for which each levy is made."

The single object of the act is to provide a revenue for the state, and the means by which the revenue is to be provided, and improvident and unwarranted obstructions to its collection provided against, are germane to that object. The provisions of the section in question are clearly of that kind. The fact that they differ from the provisions of the Code of practice or of any other statute relating to injunctions, in other cases, does not affect their validity, since the last section of Act 170 repeals all other laws with which the act may conflict.

It is said that the opinion heretofore handed down sets at naught the purpose of Act 112 of 1916, which declares that a conservatory writ shall not be dissolved on account of the insufficiency of the bond, unless the party furnishing the bond fails to make good the deficiency when called upon so to do by his adversary; that the amount of the bond was fixed by the judge, and that the plaintiff should not be held responsible for his error; that a citizen has the "right" to prevent, by injunction, the sale of his property for taxes which have been paid; that, as the petition for injunction alleges that plaintiff tendered payment of the taxes not in contest and that the tender was refused, and as the motion to dissolve is determinable on the face of the papers, that allegation must be taken as true, and the tender be regarded as the equivalent of payment of the uncontested taxes; and, in view of the circumstances stated, "plaintiff had the absolute right, under the law, to avert the sale of its property by the writ of injunction, wholly independent of, and not in any wise controlled by, the provisions of the revenue law, just as it would have had the

right to arrest the sale of its property by the same officer had he been proceeding under an execution to sell plaintiff property for the payment of a debt which it had already paid"; that "jurisprudence has long since established in this state the principle that a writ of injunction will not be dissolved where a party shows by his allegations that he is entitled to the writ, and that immediately after its dissolution another writ would issue"; and, finally, that no rule nisi is required in a case where the petition shows that the plaintiff is entitled to an injunction "independent of the revenue law."

Our consideration of the contentions thus set up has led to the conclusion that neither of them is well founded. Section 2 of Act 112 of 1916 declares that whenever a litigant shall have furnished a bond in a judicial proceeding, and the bond is insufficient in amount or incorrect by reason of errors or omissions therein, such litigant shall have the right to correct such insufficiency, error, or omission in the court of original jurisdiction, and to furnish a new or additional bond; and section 3 declares that:

"The right to furnish such new, or such supplemental or additional bond shall be exercised as follows: The party desiring to furnish such * * * bond shall have the right so to do at any time prior to judgment, if the adverse party * * * shall cause to be served upon him through the proper officer, * * * a notice that such adverse party * * * claims that a bond furnished in the proceeding to which he is a party or in which he has an interest is insufficient either in form or substance * * *; the said party who has furnished such bond shall have the right within two days, exclusive of Sundays, legal holidays and half holidays, to furnish the new bond, or supplemental bond, or additional bond above referred to. If he shall fail to furnish same, the case shall then proceed without any diminution of the right of the adverse party * * * to test the sufficiency of the bond furnished, whether as to the amount of [or] form thereof, or the solvency of the * * * sureties thereon."

As we have stated, the record discloses no order of court authorizing the issuance of the injunction or fixing the amount of bond;

but assuming that such an order was made, and that it has been inadvertently omitted in the making of the transcript, nevertheless the law declares that "no injunction restraining the collection of any tax or taxes shall be issued by any court unless a bond shall first be given * * * for an amount equal to that of all taxes, interest, penalties and costs of the amount of taxes [sic] contested, and fifty per cent. additional thereon included." Conceding, then, that in a case such as this a tax debtor, proceeding in disregard of the plain prohibition of a statute, may obtain an injunction restraining the collection of taxes vitally necessary for the maintenance of the public institutions of a parish, upon furnishing a bond for an amount less than the law requires, or, for that matter, for no amount, and conceding that the only penalty that he is to pay for nonobservance of the prohibition of the law is that he shall furnish a new bond, it nevertheless remains that the right to furnish the new bond is subject to the condition that it shall be exercised before judgment, and within two days after notice of the complaint, by the adverse litigant, of the insufficiency of the bond originally given.

It is true that in the instant case the notice was not given until June 25, 1917, and that the judgment dissolving the injunction and dismissing the suit was rendered on the same day, though plaintiff was entitled to two days, exclusive of Sundays, etc., within which to file the new bond; but it is also true that no new bond was then tendered, that no delay was asked for the making of such tenders, and that, though nearly a year has since elapsed, it is not shown that any new bond has been filed.

The proposition that the provisions of the Code of Practice (which became a law in 1825), authorizing and requiring the issuance of injunctions in the cases therein specified, control those of a statute enacted in 1870, prohibiting the issuance of injunctions restraining the collection of taxes, save upon the conditions imposed by the statute, and repealing all laws in conflict or inconsistent with its provisions, is plainly untenable.

[18] The contention that, as the petition for injunction alleges that plaintiff tendered payment of the taxes not in contest and the tender was refused, and that the allegation must be taken as true, and the tender regarded as the equivalent of payment of the uncontested taxes, must be considered in connection with the allegations to which it refers, and which, to our understanding, do not convey the idea that plaintiff made any tender of payment of the uncontested taxes, save upon the condition that it should be given a receipt in full for all taxes claimed by the collector. If the intention had been to convey that idea, language could readily have been found to serve the purpose. The statute reads:

"And no injunction shall issue except to enjoin the collection of that portion of the tax which may be in contest, and no injunction shall issue against the collection of that part or portion in contest until the taxpayer shall have produced and filed the tax collector's receipt showing that the taxpayer has paid that portion of the tax which is not in contest, and which the taxpayer acknowledges to be due."

No such receipt was produced, and the allegations of the petition do not convey the idea that a receipt of that character only was demanded.

The statute further provides that:

"No injunction against the collection of taxes, or any part or portion thereof, shall issue except after the issuance of a rule nisi, to be served on the tax collector, returnable in three days."

And we are unable to follow the reasoning of plaintiff's learned counsel whereby they reach the conclusion that no rule nisi is re-

quired in the cases in which the law thus declares that it is required, but that. a taxpayer is entitled to restrain the collection of taxes without regard to the law which assumes to regulate such matters.

[19] Still another contention is that a court will not dissolve an injunction if it is apparent that the party in whose favor it was issued would immediately be entitled to another such writ. In this case, however, it is apparent that plaintiff would not immediately be entitled to another such writ. It would not be entitled to enjoin, as it has done, the uncontested taxes at all, nor the contested taxes, save after the hearing of a rule nisi, which, for aught we know, might be dismissed.

It is therefore now ordered and decreed that the judgment appealed from be annulled in so far as it maintains the plea of prescription herein filed, and dismisses this suit, and in so far as it condemns plaintiff to pay all penalties provided by existing laws and 10 per cent. attorney's fees. It is further decreed that the case be remanded to the district court, to be tried upon its merits, and that the rights of the litigants, with respect to such penalties and fees, be reserved and determined by the judgment hereafter to be rendered. It is further decreed that, in so far as said judgment dissolves the injunction herein issued, it be affirmed, without prejudice, however, to the right of the plaintiff to obtain such injunction as it may be entitled to upon its complying with the law and particularly with the requirements of section 56 of Act 170 of 1898.

It is further decreed that the costs of this appeal be paid by plaintiff, and that those of the district court await the result of the trial.

PROVOSTY, J., adheres to views expressed in the original opinion, but otherwise concurs in the decree.