**COMEAUX v. SAVOY.**

No. 1087.

Court of Appeal of Louisiana. First Circuit.
March 7, 1933.

St. Julien & Fournet, of Lafayette, for appellant.

Ed Meaux, of Lafayette, for appellee.

MOUTON, Judge.

Plaintiff leased to defendant thirty acres of land on a rental of one-third of the crop raised thereon for the current year 1930, 1931.

The principal crop to be grown on the property was sugar cane. To secure the necessary advances to make the crop, defendant, Savoy, entered into an agreement for a loan from the State Agricultural Credit Corporation. To represent the sum of $604 borrowed from the corporation, defendant executed ten promissory notes, on January 30, 1931, for different amounts, payable, November 15, 1931, bearing 8 per cent. interest, with a penal clause of 10 per cent. if placed in the hands of an attorney for collection.

To secure the payment of the notes with interest and attorney's fees, defendant, Savoy, granted, by authentic act executed before Lacaze P. Billeaud, January 30, 1931, a chattel mortgage on the following described movable property: "Four horse mules, named Johnnie, Jimmie, Bob and Toby; Two single plows; One Wilson wagon, one Disc, one harrow, one Moline; One middle breaker."

The lien and pledge in favor of the Agricultural Credit Corporation for the money to be advanced on the prospective crop were recognized in the mortgage contract, in which plaintiff, Dr. R. Kossuth Comeaux, intervened, subordinating thereto his lessor's privilege and all rights or claims he might have upon the crops and other property placed by the borrower on the leased premises, with the exception of the seed cane retained by defendant. The entire proceeds of the sugar cane crop grown on the tract of land leased were applied by defendant to pay the notes.

The one-third share of Dr. Comeaux, plaintiff, in the proceeds amounted to $202.45 on which he received $38 in part settlement, from defendant.

Plaintiff, Dr. Comeaux, in suing Savoy for the $202.45, less the credit of $38 which were applied by defendant in the payment of these notes. In addition to that balance and coupled therewith, plaintiff is also suing Savoy for $100 on a promissory note dated January 17, 1930, due one year after date.

The defendant and his wife, Mrs. Gertrude Comeaux Savoy, appeared in the authentic act of mortgage and specially waived and renounced their homestead exemption under article 11 of the Constitution.

The claim of plaintiff is that by the application of the proceeds of his share in the crop by defendant to the payment of the notes due the State Agricultural Credit Corporation, he has to that extent been subrogated by operation of law to all the rights of that corporation on the notes, less the credit of $38, above referred to.

The first question presented is as to whether plaintiff, by such payment, is entitled to this subrogation.

Article 2161, Civil Code, reads as follows:

"Subrogation takes place of right:

"1. For the benefit of him who, being himself a creditor, pays another creditor, whose claim is preferable to his by reason of his privileges or mortgages. * * *

"3. For the benefit of him who, being bound with others, or for others, for the payment of the debt, had an interest in discharging it."

Before passing on the above quoted provisions of that article of the Code, under heading No. 1, we shall direct our attention to the claim of plaintiff under heading No. 3, which refers to payments made by one bound with others or for others.

As we have before stated, plaintiff appeared in the contract for the purpose of subordinating his lessor's privilege to the lien recognized in the contract in favor of the State Agricultural Credit Corporation. Thereby, he merely agreed, in effect, that he would not assert his lien for his share of the crop, the proceeds of which could be applied by Savoy to the payment of the notes, if needed. If the crop failed, it is obvious that plaintiff was not bound to anything on the notes. He was not therefore bound with or for others so as to entitle him to legal subrogation on payment of the notes. Besides, it is declared in the act of crop pledge and mortgage, that Dr. R. K. Comeaux, lessor, "is not to be personally bound for the debt." This declaration clears up the subject from all doubts and shows that under heading No. 3 of article 2161, plaintiff has no claim to the subrogation granted therein.

It is different, however, under the other provisions of that article where it says that subrogation takes place of right, viz.: "For the benefit of him who, being himself a creditor, pays another creditor, whose claim is preferable to his by reason of his privileges or mortgages."

Payment by an ordinary creditor to a privileged or mortgage creditor is, under that article, entitled to the subrogation therein provided for. We do not understand that counsel for defendant disputes the correctness of this proposition which is in line with the following ruling of the court, in the case of Zeigler v. His Creditors, 49 La. Ann. 144, 21 So. 666, where it says: "The ordinary creditor paying the debt of the mortgage

creditor is subrogated of right to the mortgage."

Counsel for defendant contends that the entire debt must be paid or its full payment must be made to effect a subrogation, but that a partial payment will not carry subrogation.

In the case of Walmsley & Company v. Theus, 107 La. 417, 31 So. 869, the court held, as follows: "A creditor who, by making a partial payment to another holding a prior special mortgage on certain property, has become legally subrogated pro tanto to the rights of the latter, is subrogated subordinately to the rights of that creditor to be paid the balance of his debt."

■ Here, the proof shows that Dr. Comeaux who was an ordinary creditor of defendant made a partial payment up to the amount of his share in the crop through defendant to the State Agricultural Credit Corporation on the special mortgage it held on the property of defendant and under the ruling in above cited case, became, of right, subrogated to the rights of that corporation for the amount thus applied to the debt. Under the doctrine so announced in that decision, if a balance had remained due on the mortgage notes by defendant, the subrogation resulting from that partial payment would have been subordinated to whatever balance that would have remained unpaid on the obligation. This is, however, not the situation here, as the total amount represented by the notes was satisfied. These notes were returned to the defendant by the Agricultural Credit Corporation which had received the payment and were marked, paid. When the partial payment was made by plaintiff, Dr. Comeaux, through defendant, by force of the law and of right, subrogation was effected in favor of plaintiff and the fact that the notes were marked paid and returned to defendant, the maker, could not prevent the legal subrogation.

The foregoing is recognized in the ruling of the court in the Theus Case, hereinabove referred to, and in which it was also said that the law took no notice of the origin of the money with which the payment is made, which carries legal subrogation with it as its effect.

Counsel for defendant contend that the entire debt must be paid to effect a legal subrogation. They quote Marcade and Cyc. to that effect.

In the case of Walmsley v. Theus, 107 La. 417, 31 So. 869, above cited, as we understand that decision, the court holds that a partial payment will entitle the creditor, who pays the debt of a superior creditor, to a legal subrogation. We must be guided by the rule thus stated by our court, and will apply it in the solution of this case.

Counsel for defendant also refer to the Loranger Case, 8 La. App. 773. In that case the waiver of the homestead and legal subrogation thereto were not involved. That decision does not apply to the contest herein submitted.

In this case, as before stated, defendant waived and renounced his homestead.

The first contention of plaintiff on this question is that defendant has offered no evidence to support his homestead claim.

■ Plaintiff alleges in his demand that the crop pledge and chattel mortgage were duly recorded, which he marks as Exhibit A and makes part of his petition. The waiver of the homestead is made in the act which grants this chattel mortgage. The recitals of such a document when annexed to the petition, and made part of it, are considered as made in the petition. Tremont Lumber Co. v. May, 143 La. 389, 78 So. 650.

Not only are such recitals considered as embodied in the petition but where a conflict arises between the documents so attached and the averments in the petition, the statements in the documents control and correct the allegations of the petition. John Bonura & Company v. United Fruit Co., 162 La. 53, 110 So. 86.

■ Plaintiff having annexed the chattel mortgage to his petition cannot contend that proof has not been introduced showing the homestead exemption.

Plaintiff, as subrogee, is claiming the waiver of the homestead made by defendant and his wife. This claim is made under article 2645, Civil Code, which reads as follows: "The sale or transfer of a credit includes every thing which is an accessory to the same; as suretyship, privileges and mortgages."

■■ A homestead gives the right of exemption of certain property from execution. If this exemption is waived by the debtor, the property is placed on the same footing with other property and becomes liable to seizure. By the waiver of the homestead the debt is secured in favor of the creditor and this waiver which has freed the property of the exemption is transferred as an accessory of the mortgage or privilege. It was so held in Iberville Bank & Trust Co. v. Dupuy, 139 La. 28, 71 So. 206; Martin v. Gary et ux., 132 La. 246, 61 So. 218. This waiver may be either general or special. Constitution, art. 11, § 3, pages 90, 91.

Waples on Homestead and Exemption, page 548, § 7, in referring to the special waiver, says: "The usual release clause is understood to be made with reference only to the mortgagee of the instrument though not confined to him in terms."

In speaking of this special waiver our Supreme Court in Martin v. Gary, 132 La. 246, 61 So. 218, above cited, says that the homesteader may restrict the waiver as he thinks

proper, but, in connection therewith, remarks, that "as the sole purpose, in such case, is to obtain money or credit, it would require very specific language to authorize the conclusion that, in obtaining money or credit from A., on the faith of such waiver, it was not the intention that the security offered should enure to the benefit of the heirs and assigns of A., as well as to that of A. individually."

It would seem from the expression of the court in that decision that it has adopted a more liberal construction of the waiver than can be inferred from the language used by Waples in the quotation hereinabove given.

In this case the waiver by Savoy, and participated in by his wife, reads, as follows, that by these presents, "specially waive and renounce said homestead right and exemption from seizure in favor of the lender in the foregoing act to enure to the benefit of said lender as well as to any and all future holder or holders of any or all of the notes specially described herein [without the necessity of notarial transfer] for any and all amounts due by the borrower to the lender as well as for the full amount of any or all of the said notes, with interest, attorney's fees and all costs as stipulated herein."

■ Here, the language employed by the debtor in conferring the benefit of the waiver on the future holder or holders of the note or notes is rather broad and is not suggestive of any restrictions. It will be observed that the benefit of the waiver is for the benefit of the holder or holders not only of all of the notes, but "of any" and as stated in brackets, "without the necessity of notarial transfer."

Does not the last expression in brackets include Dr. Comeaux, plaintiff, who, as subrogee, by force of the law and without the necessity of indorsement and transfer, became the beneficiary of the waiver or exemption as an accessory of the mortgage granted by Savoy to the State Agricultural Credit Corporation?

It is also declared in the act that if any or more of said notes be paid by any indorser or indorsers "or by any third party" that delivery should be made to the party paying, of course, with subordination to the rights of the agricultural corporation, as provided for in the contract. It is true that Dr. Comeaux had intervened in the act for the purpose of subordinating his lessor's lien in favor of the rights of the agricultural corporation and in the technical sense was not a third party thereto. The fact, however, that third parties were included in the act as those who might acquire any or more of the notes by payment, shows that its provisions were not intended to be restricted to the indorser or indorsers who might become owners by purchase in the course of trade from the original holder, the Agricultural Credit Corporation. The act it is true says also that the borrower

takes notice of the fact that the lender, meaning the Agricultural Credit Corporation, obtains its funds for the making of advances only by rediscounting the notes and that, should it be unable to rediscount the notes, the corporation would incur no liability for failure to continue the advances.

This provision of the contract, as we understand it, was not intended to convey the idea that no transfer of the note could take place except when rediscounted. It was inserted in the contract, as we construe it, for the protection of the corporation from the obligation of continuing its advances in case of its inability to obtain money by rediscounting the notes and not as an exclusive method of disposing of the notes.

In Martin v. Gary, 132 La. 246, 61 So. 218, 219, above cited, in passing on the question of exemption, the court, after referring to the very specific language required in such cases to restrict the benefit of the waiver, concludes by saying that the waiver having once attached, "remains so attached, like any other security, until the debt is paid, no matter who may thereafter become the holder of it," and bases that conclusion on C. C. article 2645, which in the transfer of a credit includes as an accessory a suretyship, privilege, or mortgage.

In the instant case the waiver was attached to the debt and like any "other security" passed to any one who thereafter became the holder thereof. By the effect of legal subrogation, the waiver was included as an accessory of the mortgage rights of the agricultural corporation which plaintiff acquired of right by the force of the law.

In the contract in question plaintiff intervened to subordinate his claim to the corporation that Savoy might obtain the credit which, as was remarked in Martin v. Gary, 132 La. 246, 61 So. 218, is usually the sole purpose of such a contract. It is evident that neither Savoy, nor the corporation, felt assured that the two-third share Savoy was to get in the crop would be sufficient to discharge his obligation. Hence, it is reasonable to presume that he concluded he might need the one-third which was to be the share of Dr. Comeaux. Placed in such a situation, it cannot be believed that the intention of Savoy in waiving his homestead exemption was to exclude the benefit of that waiver from plaintiff who had relinquished his privilege to assist him in obtaining the loan. This reference is not made with the idea that any equitable considerations should be invoked in the disposition of the issues but solely for the purpose of showing that when the contract was drawn it could not have been intended that plaintiff would be excluded from the benefit of the waiver from which followed, as a legal consequence, his right to a reinscription of the mortgage, and its enforcement against the property that had

been freed of the exemption, as was held below.

Judgment affirmed.