No. 2197.
Second Circuit Appeal.

MISS LOTTIE FOYE v. ST. FRANCIS SANITARIUM AND TRAINING SCHOOL· FOR NURSES

(June 6, 1925, Opinion and Decree.)

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Pleading—Par. 62, 71.**
An exception no cause of action containing a statement which is not contradicted by the allegation of the petition is properly overruled.

2. **Louisiana Digest—Charities—Par. 12.**
The only obligation that a charitable institution owes to the public, either pay patients or charity patients, is to select with care and precaution the persons who act as nurses. The evidence shows in this case that the nurses were not negligent.
(Civil Code, Art. 2315. Editor's note.)

Appeal from Sixth Judicial District Court of Louisiana, Parish of Ouachita, Hon. Fred M. Odom, Judge.

This is a suit for damages for personal injury.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

M. C. Redmond, of Monroe, attorney for plaintiff, appellant.

Adolph Wolff; Hudson, Potts, Bernstein & Sholars, of Monroe, attorneys for defendant, appellee.

REYNOLDS, J. In this case Miss Lottie Foye sued the St. Francis Sanitarium and Training School for Nurses for $10,000 damages alleged to have been sustained by her while underging an operation known as hypodermoclysis administered to her by Miss Ora Belle Hayden, a nurse in that institution, under the direction of plaintiff's physician, Dr. G. M. Snelling, while plaintiff was a patient in the sanitarium.

Plaintiff claims that the hypodermoclysis was too hot at the time it was administered

and that it caused a severe burn which gave her great pain and left a permanent injury from which she limps.

Defendant filed an exception of no cause of action, and later answered denying liability on the grounds, first, that it is a charitable institution, organized for charitable purposes, and owed no duty to plaintiff other than the use of all needful care in selecting the nurse used by the physician employed by plaintiff and who administered the treatment upon plaintiff in this case; and, second, that in the treatment given plaintiff there was no fault or negligence on the part of the nurse, Miss Ora Belle Hayden, who administered the hyperdermoclysis under the direction of Dr. G. M. Snelling.

On these issues the case went to trial and there was judgment for defendant and the plaintiff appealed.

### OPINION.

The exception of no cause of action cannot be sustained, for the reason that the allegation that the St. Francis Sanitarium and Training School for Nurses is a charitable institution is contained in defendant's exception and not in plaintiff's petition. The allegations of the petition as a whole, if taken as true, entitle plaintiff to recover.

On the question as to whether defendant used every precaution, care and good judgment possible in selecting Miss Ora Belle Hayden as one of its nurses, we quote the following testimony:

Mother Superior, pages 28 and 29:

"Q. Mother, what care do you use, and what are the qualifications of nurses entering your institution for training; what care do you use in selecting those nurses?

"A. Well, they have to meet requirements of the United States Medical Board of Examiners.

"Q. What are those?

"A. Physical, moral and educational requirements; they have to be in good health; have to be of good moral character, perfectly trustworthy, and at least have completed the ninth grade; and they have three months probation during which time we try them out to see if they are fitted to become a nurse.

"Q. Did Miss Hayden go through that test?

"A. Yes.

"Q. You know Miss Hayden, I presume?

"A. Yes.

"Q. What is your opinion of Miss Hayden as a nurse?

"A. Miss Hayden is, and has always been, one of our best and most conscientious nurses.

"Q. She has completed all the tests given by the Sanitarium?

"A. Yes.

"Q. And as outlined by yourself?

"A. Yes.

"Q. And proven to be satisfactory in every particular?

"A. Yes.

"Q. Ever been any other complaint about Miss Hayden, other than the present one?

"A. No."

Dr. G. M. Snelling, page 40:

"Q. Do you know Miss Hayden?

"A. Yes, sir." * * *

"Q. What is your opinion of her as a nurse—as to her qualifications at the time she took this case?

"A. She was a competent student nurse at that time; competent to do the nursing of the hospital."

Dr. J. Q. Graves, pages 50, 52, 53 and 54:

"Q. Do you know Miss Ora Belle Hayden?

"A. Yes, sir.

"Q. Did you know her on or about the third of October, 1922?

"A. Yes, sir.

"Q. Are you familiar with her qualifications as a nurse?

"A. Yes, sir.

"Q. State what they were?

"A. She is so regarded by the profession and nurses also as a splendid nurse, very competent." * * *

"Q. Is it customary to have the student nurses administer hypodermoclysis?

"A. Yes, sir." * * *

"Q. Would you consider her competent to have charge of an operation like that?

"A. Certainly do, Judge. She has given hundreds of them over there before she graduated."

Dr. R. O. O'Donnell, page 55:

"Q. Do you know Miss Ora Belle Hayden?
"A. Yes, sir." * * *

(Page 56):

"Q. I will ask you to state her qualifications as a trained nurse on or about the 3rd of October, 1922, in your opinion?
"A. I think she was a very competent nurse." * * *
"Q. From what you know of Miss Hayden, would you consider her competent to administer this hypodermoclysis?
"A. Yes, sir; that is a very simple thing; nothing to do at all except to stick the needle under the skin. Very simple procedure. I think any nurse could do it."
* * *
"Q. You say you taught Miss Hayden?
"A. She was in one of my classes; I taught her regularly at the sanitarium, and have for years.
"Q. How did she class as a student?
"A. Good."

Under this evidence we are convinced that the St. Francis Sanitarium and Training School for Nurses used due care and was fully justifiable in selecting Miss Hayden as one of its student nurses.

Having used due care in selecting Miss Hayden as a student nurse, the law applicable to the liability of the defendant is fully discussed in the case of John Jordan vs. Touro Infirmary & Hebrew Benevolent Association, No. 135,097 on the docket of Division "C", Docket 4, of the Civil District Court of the Parish of Orleans.

In that case the Civil District Court held that the only obligations that a charitable institution owes to the public either pay patients or charity patients, is to select with care and precaution the persons who act as nurses.

This case was carried to the Court of Appeal for the Parish of Orleans and the judgment of the Civil District Court was affirmed.

On January 30, 1923, the Supreme Court of Louisiana considered the issues upon an application for a writ of certiorari and refused to issue the same, simply stating on the application the following words: "Refused. The decree is correct."

The principle of law decided in that case and affirmed by the Supreme Court might very well dispose of the case before us, as it is abundantly shown by the evidence that St. Francis Sanitarium and Training School for Nurses is a charitable institution and that it took good care and precaution in selecting Miss Ora Belle Hayden as a student nurse.

However, we feel that it is only fair to Miss Hayden to say that the evidence introduced thoroughly convinces us that the plaintiff has failed utterly to establish lack of skill or want of efficient treatment by Miss Hayden.

The complaint of the plaintiff is the administration of the hypodermoclysis by Miss Hayden was too hot and caused a severe burn to plaintiff and afterwards the sloughing off of a large portion of the flesh from her left hip.

This might have resulted without any fault on the part of Miss Hayden.

Mother Superior testified, page 30:

"Q. Mother, have you ever had any experience with the treatment of or the giving of hypodermoclysis?
"A. Yes.
"Q. Will you state how long you have seen that treatment given, or what length of time does your experience cover?
"A. Well, I have seen hypodermoclysis given for about twenty years.
"Q. Have you ever seen sloughing occur in cases?
"A. Yes." * * *
"Q. Did you ever see a case of sloughing, Mother, where the solution was given too hot? Would that cause sloughing?
"A. I have never seen the solution given too hot. I have seen sloughing frequently but the solution is not given too hot."

Dr. G. M. Snelling, page 41:

"Q. Did you see her right thigh where it had sloughed?

"A. Yes, sir.

"Q. You treated it?

"A. Yes, sir.

"Q. Finally cured it?

"A. Yes, sir.

"Q. Is it your opinion that that was caused by the solution being too hot, or what caused that sloughing?

"A. Well, I should not think so. This solution could have done that just as we have sloughs occasionally as you have abscesses following hypodermics of any type sometimes.

"Q. This patient was very low at the time you prescribed this treatment?

"A. Yes, sir, very low.

"Q. If this treatment had not been prescribed do you think she would have lived?

"A. Well, I felt like she would not have lived if we had not taken her to the hospital to get what treatment as was necessary; and this was the first measure I ordered given. I felt like that was essential to her life, yes sir.

"Q. Do you know what is the cause of the sloughing in giving of this treatment, doctor?

"A. No, sir, I don't know definitely what; sometimes we have these sloughs following hypodermoclysis; I could not say definitely what was the cause of the slough."

Dr. J. Q. Graves, page 49:

"Q. In your experience with this type of treatment, doctor, have you ever had sloughing to follow the giving of this class of treatment?

"A. Yes, I have.

"Q. Do you know what causes that sloughing?

"A. Well, we think it is due to what we call necrosis; where fluid is put into the tissues and the heart action is rather bad, circulation is bad, and it is not picked up fast enough to be carried away. The tissues don't empty themselves before the blood vessels block up, and we have what is known as cell death, or death of cells in that area, called necrosis." * * *

"Q. I mean will this sloughing occur whether the solution is hot or warm?

"A. Yes, you could get it where it is not hot. It's the pressure that produces it."

Dr. R. O. O'Donnell, page 56:

"Q. Doctor, do you know what causes sloughing in these hypodermoclysis cases?

"Yes, that is, I have my own opinion. It may not be the best, but it is mine. I think it is due to a pressure in the tissues and the pressure cutting off the blood supply; tissue will not live without blood supply; in general, cut off the blood supply to any part of the body and it will cause necrosis or death of the tissues; that's what necrosis means."

Miss Ora Belle Hayden, page 58:

"Q. Just state to the court exactly what you did?

"A. Well, I only followed Doctor Snelling's orders. He ordered a soda glucos solution to be given every four hours—as much as she could take, and I just followed his orders.

"Q. Tell the court exactly what you did? describe what you did in preparing the solution. Heating it?

"A. The solution had been prepared already and I warmed one bottle of the solution and left the other one to cool. I brought in a sterilized hypodermoclysis bottle, hung it up, and I mixed the solution—put in a portion of the cold and of the hot also. It was fixed to her blood temperature. I tested this by letting a small amount run on the inner part of my arm, also by touching the bottle."

(Page 61):

"Q. What was the temperature of that hot solution?

"A. It was blood heat.

"Q. Did you have a thermometer?

"A. No, sir, but I tested it on the inner part of my hand.

"Q. That an active thermometer?

"A. That's how we were taught to test it." * * *

"Q. I just asked you if you knew the temperature?

"A. Well, I know it was not too hot."

Miss Nettie Mullin, page 70:

"Q. Are you familiar with the method of treatment known as the hypodermoclysis of glucos and soda?

"A. Yes.

"Q. State whether or not in any case you administered that treatment you had sloughing?

"A. I had.

"Q. Was it caused by the solution being too hot?

"A. No.

"Q. Do you know the cause of it?

"A. No, I know the solution was not too hot."

From all the evidence we are convinced that the treatment administered by Miss Hayden was 100% efficient and that the injury resulted from some unknown cause and not attributable to the fault of any one.

For these reasons, the judgment of the lower court is affirmed.