**STAMOS**

v.

**STANDARD ACC. INS. CO.**

Civ. No. 4380.

United States District Court,
W. D. Louisiana, Shreveport Division.
March 1, 1954.

Booth, Lockard, Jack & Pleasant, Shreveport, La., for plaintiff.

Cook, Clark & Egan, Shreveport, La., for defendant.

DAWKINS, JR., Chief Judge.

Alleging serious personal injuries, said to have been sustained on September 25, 1953, when a heavy torso-sized punching bag fell upon him at a gymnasium operated by the Young Men's Christian Association at Shreveport, Louisiana, plaintiff sues defendant directly and alone [1] as the public liability insurer of the "Y". As the basis of his action, plaintiff asserts that "res ipsa loquitur" is applicable [2], but alternatively pleads that the accident resulted solely and proximately from negligence of the assured, its agents and employees, in various particulars unnecessary to detail here.

Defendant has moved to dismiss on the grounds: that the YMCA is an eleemosynary institution, devoted to religious and charitable work, of which plaintiff was a member and beneficiary; that under the law of Louisiana such an organization is not liable for tort damages sustained by its members or beneficiaries [3]; that defendant, under the terms of its policy, is obligated to pay only such amounts as its assured is legally obligated to pay; and that, accordingly, since the assured is not liable, plaintiff cannot maintain this action against defendant. Attached to its motion are copies of defendant's policy and of the charter of its assured.

Plaintiff, in opposition, argues that lack of liability, or immunity, on the part of the assured is a defense purely "personal" to it, which cannot be used by defendant [4].

The latter counters by urging:

(1) that eleemosynary institutions cannot escape tort liability for injuries negligently inflicted upon third persons who are not members or beneficiaries; that in the cases relied on by plaintiff the claimants were outsiders—third persons who could have maintained suits against the institutions as well as their

---

1. Under LSA–R.S. 22:655, formerly Louisiana Act 55 of 1930.

2. We do not believe the doctrine properly could be applied in a case of this kind.

3. Foye v. St. Frances Sanitarium, 2 La. App. 305; Thibodaux v. Sisters of Charity, 11 La.App. 423, 424; Jurjevich v. Hotel Dieu, La.App., 11 So.2d 632; and cases from other jurisdictions.

4. Brooks v. Bass, La.App., 184 So. 222; Lusk v. U. S. Fidelity & Guaranty Co., La.App., 199 So. 666.

insurers; therefore, that plaintiff's citations are not in point; and,

(2) that the Louisiana Supreme Court, in Burke v. Massachusetts Bonding & Ins. Co.[5], in effect has repudiated the earlier Louisiana jurisprudence, which was based, defendant says, upon Rome v. London, etc., Ind. Co., La.App., 169 So. 132, permitting direct actions such as this, where the assured, because of a legal immunity, cannot be held liable to the injured party.

As to the first point, we find no Louisiana decisions making such a distinction in a direct action against a liability insurer. On the contrary, in the very cases cited by plaintiff, and sought to be distinguished by defendant, the Louisiana courts expressly have held that the *immunity* of the assured was a "personal" defense unavailable to the insurer. A number of decisions[6], not cited by plaintiff, have held likewise.

In those cases (except Rome, which was like the present one) the coverture existing between husband and wife was held to be a "personal" defense which the husband's insurer might not use in defense of a suit brought by the wife for injuries she sustained through the husband's negligence. There could be no stronger case of non-liability (*immunity*) on grounds of public policy than that of a husband to his wife for his torts against her. Yet, Louisiana courts consistently have held the husband's insurer liable in such cases. For that reason, we think the defense here is fruitless, particularly since defendant is urging its assured's *"personal" immunity* as the reason for dismissal.

As to the second point, in our judgment Burke does not affect earlier Louisiana jurisprudence on this subject. There a wife sued her husband's insurer directly and alone, in a Louisiana court, for injuries she sustained in an accident which happened in Mississippi, due to her husband's negligence. The court held that her substantive rights arose in and were governed by the laws of Mississippi, where the alleged tort occurred. Since that state recognizes coverture, does not have a "direct action" statute, and enforces the standard policy provision that no action may be brought against the insurer until judgment first is obtained against the insured, Mississippi law was followed, the suit being dismissed. The court held that the Louisiana Direct Action Statute applies only to causes of action arising in this state. It stated that "the statute merely gives a claimant a direct right of action against the liability insurer when he has a cause of action against the insured, or *where the insured would be liable but for an immunity personal to him*" (Emphasis supplied). In discussing Matney v. Blue Ribbon, Inc., 202 La. 505, 12 So.2d 253, relied on by Mrs. Burke, the court commented that there it "* * * was careful to point out that if the tort had been committed in Louisiana, the cause of action would be governed by the law of this State. * * * In the instant case the accident occurred in Mississippi and necessarily the question of whether the plaintiff has a substantive cause of action must be determined by the law of that State." [209 La. 495, 24 So.2d 878.]

Defendant argues that in the latter part of its opinion in Burke, the court, in effect, overruled Rome, and the cases that have come after it, because Rome based its holding on Articles 3060 and 2098 of the LSA–Civil Code, which were held inapplicable in Burke. This does not follow at all.

It is true that the Louisiana Court of Appeals used Article 3060 of the Code as one basis for its holding in Rome. Actually, that article, which is found in the

5. 209 La. 495, 24 So.2d 875.

6. Rome v. London, etc., Ind. Co., La.App., 169 So. 132; Edwards v. Royal Ind. Co., 182 La. 171, 161 So. 191; Harvey v. New Amsterdam Casualty Co., La.App., 6 So. 2d 744; Scarborough v. St. Paul Mercury Ind. Co., La.App., 11 So.2d 52; Chapman v. Travelers Ind. Co., La.App., 45 So.2d 557; LeBlanc v. New Amsterdam Casualty Co., 202 La. 857, 13 So.2d 245.

 

Code under the title of "Suretyship", was not in point. Its citation was superfluous. The Code, at Article 3035, defines suretyship as "* * * an accessory promise by which a person binds himself for another *already bound,* and agrees with the creditor to satisfy the obligation, *if the debtor does not.*" (Emphasis supplied.)

It is our opinion that this article does not cover the relationship of insurer and insured, for it pertains to a *preexisting* debt, as distinguished from a *future* obligation, which the surety will discharge if the debtor does not[7]. Rather, we think Article 2098 of the Code, which is found under the title of "Obligations", was the true and appropriate basis for the holding in Edwards and Rome, and for those cases which have followed them. It reads:

> "A codebtor in solido, being sued by the creditor, may plead all the exceptions resulting from the nature of the obligation, and all such as are personal to himself, as well as such as are common to all the codebtors.
>
> "He cannot plead such exceptions as are *merely personal* to some of the other codebtors." (Emphasis supplied.)

■ We think the effect of Burke is limited strictly to the facts of that case and others like it. Actually, Rome (decided June 22, 1936) came after and relied upon Edwards, a Supreme Court decision (rendered March 4, 1935). Rome, therefore, did not establish the rule of Louisiana law here under attack. Ed-

wards did; and, so far as we can determine, it is still the law of this state in cases arising within its boundaries.

We believe defendant's motion clearly is unmeritorious[8]. It is overruled.

---

7. See Edwards v. Royal Ind. Co., supra, where the Louisiana Supreme Court said: "it may be well to point out that the contract between the insured and the insurer is one of insurance; i. e., protection against public liability for *damages* caused by negligence, and *not a contract of suretyship.*" [182 La. 171, 161 So. 194]. (Emphasis supplied.)

8. "It is too plain for extended argument that the defense of immunity from liability because of the engagement in the operation of a governmental function is one

which is purely personal to the public corporation. The exemption is based on reasons of public policy, and, where the public body deems it wise to nevertheless protect the people by insuring its activities against negligence in the operation thereof, it is manifest that to allow the paid insurance carrier to escape liability on such a ground would be to accomplish a miscarriage of justice." Rome v. London & Lancashire Ind. Co. of America, La.App., 169 So. 132, 137.