## WOLFE v. MOSLER SAFE CO.

(Supreme Court, Appellate Division, Fourth Department.   July 12, 1910.)

1. MASTER AND SERVANT (§ 1*)—EXISTENCE OF RELATION.
   Where a master loans his servants with their consent to a third person to perform certain work, the third person for the time being is the master, he having for the time being the control of the servants.
   [Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 1.*]

2. MASTER AND SERVANT (§ 88*)—EXISTENCE OF RELATION.
   A seller to a bank of a safe and vault bound himself to deliver the same and a mechanic to take charge of the work.  An expert in the seller's employ took charge of the work of installing the safe and vault, and the bank turned over to him its servants, and they were under the complete control of the expert in the work, though the bank paid for their services.  Held, that the servants were for the time being the servants of the seller, and he was liable for injury negligently inflicted on them in the performance of the work.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 144; Dec. Dig. § 88.*]

3. APPEAL AND ERROR (§ 1064*)—IMMATERIAL QUESTIONS.
   Where the undisputed evidence showed that a person was an employé of another, the question whether the court erred in its charge assuming the existence of the relation of master and servant or in submitting the question to the jury who found that the relation of master and servant existed was immaterial.
   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4219, 4221–4224; Dec. Dig. § 1064.*]

4. EVIDENCE (§ 539*)—OPINION EVIDENCE—COMPETENCY.
   The opinion of an expert in moving large metal bank vaults as to whether a method adopted in moving a particular vault was safe is competent.
   [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2349–2352; Dec. Dig. § 539.*] ·

   McLennan, P. J., dissenting.

Appeal from Trial Term, Oneida County.

Action by Henry J. Wolfe against the Mosler Safe Company. From a judgment for plaintiff and from an order denying a new trial, defendant appeals.   Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Frederick G. Fincke, for appellant.
William S. Mackie, for respondent.

SPRING, J.   The action is negligence to recover for injuries sustained by the plaintiff on the 23d of December, 1905 by the fall of a vault front upon him while he was assisting in putting the same in place in the National Exchange Bank building at Boonville, in the state of New York.   The bank purchased a safe and vault front of the defendant for the sum of $900, and the extent of the obligation of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

latter is evidenced by a letter written by it and bearing date December 5, 1905, and which contains the following:

"Safe and vault door to be delivered by the Mosler Safe Co., also a mechanic sent to take charge of the work. The bank to furnish teams and help necessary to deliver the goods from the depot into the bank vault. Mosler Safe Co. to stand all other expenses. Vault door to have a new casing, and put in thorough condition."

In pursuance of the agreement the safe and vault front were shipped by the defendant to Boonville, and on December 22, 1905, the defendant, having received word of their arrival, notified the bank that an expert was on his way to put them in place, which was necessary in the performance by the defendant of its agreement. The following day one Hoefig, the expert in the defendant's employ, arrived at Boonville and began the work. The plaintiff was a carpenter, and with two or three other men had been in the employ of the bank for some time making repairs, and they were all turned over to Hoefig to enable him to place the vault front and safe, and they were under his complete direction and control in the carrying on of this work, although the bank paid them for their services. Hoefig caused the safe to be unloaded from the railroad car and placed in the bank vault, and in the meantime the plaintiff, with others, under the direction of Hoefig, brought the vault front, or vestibule, to the bank. This front was of steel about 8 feet high, 4½ feet across the front, 2½ feet thick, and weighed about 3½ tons. Upon reaching the bank it was found the vestibule would not go through the doorway without being tipped on its side. It was accordingly turned up sideways, pushed into the building on rollers and laid flat on the floor. It was rolled within three or four feet of the vault opening and then raised to a nearly vertical position, a rope being placed around it to keep it from falling over. Iron crowbars were used to get the vestibule square with the vault opening and about 16 inches from it. The rope was then removed to allow the cornice and pilasters to be bolted on and Hoefig ordered the plaintiff and another workman to get some thin pieces of wood and to raise the back part of the vestibule so that these thin slabs and greased irons could be placed under the back part of the vestibule in order that it might be slipped into place. After these pieces of wood and greased irons were so placed, Hoefig directed that similar ones be put under the front part of the vestibule in place of a 4x6 timber then in use. The plaintiff and one Clark were directed by Hoefig to place an iron crowbar under the front of the vestibule to lift it up so that the timber could be removed and the thin sticks and greased irons substituted. The plaintiff was down on his knees prying on the bar and Clark had his foot on it exerting what pressure he could. Hoefig stood ready to withdraw the timber and replace it with the iron pieces when the vestibule was raised. No provision, apparently, was made to steady the vestibule or keep it from falling. The vestibule was raised, the timber removed and thrown to one side and before Hoefig could substitute the thinner sticks, the vestibule slipped back on the plaintiff's bar and fell forward upon him, inflicting serious injury. The defendant offered no evidence and the facts were not

in dispute. The vault front weighed more than three tons, and the plaintiff claims that the defendant pursued a careless, improper method in putting it in place. The rope was removed and this unwieldy vestibule rested on greased irons, with nothing to support it and the plaintiff with his helper was directed by Hoefig to get down on his knees in front of this heavy metal front and raise it up with a steel crowbar, so that both the place assigned to the plaintiff for his work and the tools supplied him were not reasonably safe. These questions were submitted to the jury and the counsel for the appellant does not contend that their verdict was not justified either as to the negligence of the defendant or the plaintiff's freedom from contributory negligence.

The chief complaint of the defendant is that the plaintiff was not in its employ so that the relation of master and servant did not exist between them. The plaintiff was not experienced in putting bank vault fronts in place. He knew nothing of that business. The defendant did not assume to trust the delivery of the safe from the car to the bank vault, or the delivery and placing of the vestibule to men in the employ of the bank. It sent its own expert to take charge of this work, and required the bank to loan or supply its expert with men necessary to do the manual work and obey his directions. Hoefig was in control from the start. The bank officials did not interfere with his management. They knew that the defendant was not entitled to receive pay for these articles until they were properly in place. Where an employer loans his men, with their consent, to another man or company to perform certain work the latter for the time being is the master of the men so loaned to him. Wyllie et al. v. Palmer, 137 N. Y. 248, 257, 33 N. E. 381, 19 L. R. A. 285 et seq.; Higgins v. Western Union Tel. Co., 156 N. Y. 75, 78, 50 N. E. 500, 66 Am. St. Rep. 537 et seq.; Hallett v. N. Y. C. & H. R. R. Co., 167 N. Y. 543, 546, 60 N. E. 653; Cunningham v. Syracuse Imp. Co., 20 App. Div. 171, 46 N. Y. Supp. 954; Howard v. Ludwig, 171 N. Y. 507, 64 N. E. 172.

In Higgins v. Western Union Tel. Co., supra, the court expressed the proposition, at page 78 of 156 N. Y., page 501 of 50 N. E. (66 Am. St. Rep. 537), in this way:

"The fact that the party to whose wrongful or negligent act an injury may be traced was, at the time, in the general employment and pay of another person, does not necessarily make the latter the master and responsible for his acts. The master is the person in whose business he is engaged at the time, and who has the right to control and direct his conduct. Servants who are employed and paid by one person may, nevertheless, be ad hoc the servants of another in a particular transaction, and that, too, when their general employer is interested in the work."

The master is the one who for the time being has control of the men. The fact that the plaintiff was hired by and in the employment of the bank is not important. The bank voluntarily parted with its authority over him and surrendered him, with its other men, for the performance of a specific work, and in its performance the defendant, through its foreman or superintendent, had the same authority as if it had hired the men, or as if they were sent on with Hoefig to put the vault front and safe in the bank. The plaintiff knew of his transfer to the defendant. He accepted and obeyed the orders of Hoefig precisely

the same as if the defendant were his permanent employer and paymaster. The trial court apparently held as matter of law at the close of the evidence, and in his main charge, that Hoefig was the servant or agent of the defendant. At the close of the charge, and after exception to this portion of it by the defendant's counsel, he submitted to the jury the question of Hoefig's relations with the defendant. It is of no great importance whether he determined this himself or submitted the proposition to the jury, for the defendant offered no evidence and the proof showing the employment of Hoefig by the defendant and also of the loan of the plaintiff to the defendant, and Hoefig's complete authority over him are undisputed facts.

On the trial the plaintiff swore one witness who qualified as an expert in the moving of large and cumbrous bodies like this vault front. He was permitted to answer in the negative, under objection, in response to a hypothetical question embodying the manner of moving this vestibule, whether the method adopted by the defendant's expert Hoefig in installing this vestibule was safe practice. It was conceded by the defendant that the plaintiff had two other witnesses who would make similar answers to like questions. I think this evidence was competent. Jenks v. Thompson, 179 N. Y. 20, 71 N. E. 266; Finn v. Cassidy, 165 N. Y. 584, 59 N. E. 311, 53 L. R. A. 877; O'Neil v. D. D., etc., R. R. Co., 129 N. Y. 125, 29 N. E. 84, 26 Am. St. Rep. 512; German-Am. Ins. Co. v. N. Y. G. Co., 103 App. Div. 310, 93 N. Y. Supp. 46, affirmed 185 N. Y. 581, 78 N. E. 1103; Prime v. City of Yonkers, 131 App. Div. 110, 115 N. Y. Supp. 305.

In addition to the cases cited this court has recently in two cases held such evidence was admissible. In Murphy v. N. Y. C. & H. R. R. R. Co., which was decided at the opening of our May term, without an opinion, the plaintiff was injured by the falling of an alcohol jack used in raising an engine, and which jack was claimed to be inadequately supported. The plaintiff's counsel was permitted to put to an expert machinist a hypothetical question embodying the condition of the jack and its support, and asked if that "was safe practice," and this court affirmed the recovery of the plaintiff. A like ruling was made in Shand v. Hudson Valley R. R. Co., 125 App. Div. 898, 109 N. Y. Supp. 1146. In each of these cases the point was distinctly raised, presented on the briefs, and elaborately argued.

The manner of placing this cumbersome bank vault was not within the common experience or knowledge of men. The jurors need enlightenment on the vital question whether the plan Hoefig adopted was a reasonably safe one. The opinions of competent men of long experience in handling metal bank vaults of this kind would be of service to the jury in passing upon this question, and that is the purpose of all testimony. The functions of the jury were not usurped by the answer to this hypothetical question. As was remarked in Finn v. Cassidy, 165 N. Y., at page 591, 59 N. E., at page 313 (53 L. R. A. 877):

"It is quite probable that there was not a man upon the jury, unless he happened to be an expert, who would have attempted to solve the problem of properly supporting and sustaining the chimney in question without calling to his aid some expert advice from an engineer or some person of experience on such a subject. The common mind, as we know, is not always equal to

the proper solution of such a problem in such an emergency, and the counsel and advice of engineers or persons of experience, in such matters, is always valuable and desirable, and it is quite plain that the tendency of courts and writers on the law of evidence is in that direction."

The judgment should be affirmed.

Judgment and order affirmed, with costs.　All concur, except Mc-LENNAN, P. J., who dissents.