MESSINA v. SOCIETE FRANCAISE DE BIENFAISSANCE ET D'ASSISTANCE MUTUELLE DE LA NOUVELLE ORLEANS et al.*

No. 16331.

Court of Appeal of Louisiana. Orleans.

Nov. 30, 1936.

*Rehearing denied Jan. 11, 1937.

Spearing, McClendon, McCabe & Schmidt and O. H. Dabezies, all of New Orleans, for appellants.

Lewis R. Graham and Harry R. Cabral, both of New Orleans, for appellee.

WESTERFIELD, Judge.

This is an appeal by the Societe Francaise De Bienfaissance et D'Assistance Mutuelle de la Nouvelle Orleans (to which we shall hereafter refer as the French Hospital) and its insurer, the United States Fidelity & Guaranty Company, from a judgment of the civil district court in favor of the plaintiff, Rose Messina, for $2,500, against both appellants in solido.

The suit is one for damages, ex delicto, and is based upon the alleged incompetency and negligence of Richard Young, an externe, connected with the French Hospital, in the administration of treatment, prescribed by plaintiff's doctor, and known as hypodermatoclysis.

In her original petition plaintiff charged that the French Hospital was operated for revenue; that she was a patient in the institution, paying the usual hospital charges; that on February 27, 1934, she was operated on by her physician, Dr. Graffagnino; that following the operation an externe named Young gave her a hypodermatoclysis, which consisted of the injection of a fluid in her thighs; that the liquid used in this treatment was too hot, causing burns on her legs, with consequent suffering, loss of income from her profession as a trained nurse, and expenses, for which she claimed $30,755; that Young, whose negligence caused her injury, acted for the hospital as "vice principal" and not as the agent of plaintiff's doctor in the administration of the hypodermatoclysis, which treatment was given in pursuance of the hospital undertaking to furnish all necessary treatment for its patients.

To this petition defendants filed exceptions of no right or cause of action based upon alleged insufficiency of allegation.

The exceptions were maintained and plaintiff allowed to amend, which she did by filing a supplemental petition in which the allegations held to be essential were incorporated. This supplemental petition was filed on the 15th day of March, 1935, which was more than one year after her injuries were sustained. Defendants then filed a plea of prescription of one year, which was apparently overruled. The case was then tried on its merits by a jury, which, by a vote of nine to three, brought in a verdict for plaintiff for $2,500.

We will first consider the exception of no cause of action. In the case of Congdon v. Louisiana Sawmill Company, 143 La. 209, 78 So. 470, 471, in which the plaintiff sought to hold the defendant responsible for the negligent and unskillful act of a physician employed by defendant to treat injured and sick employees, it was said: "Under the decisions, the employer can be made to respond in damages in such a case only in the event that he fails to exercise ordinary care in the selection of the physician, or in the event that he derives a pecuniary profit out

of the fund employed for hospital or medical purposes."

In the case of Jordan v. Touro Infirmary, 123 So. 726, this court, quoting freely from the Congdon Case, held that the doctrine of respondeat superior, as expressed in our law by article 2320 of the Revised Civil Code, has no application to hospitals which have not been established for making money or profit, but have benevolent and charitable purposes, notwithstanding the fact that certain classes of patients were required to pay for hospital accommodations and medical attention.

■ The basis of the argument on the exception of no cause of action is that, since the original petition did not charge that the hospital was operated for profit, but for revenue, which is said to be a term of entirely different import, and because it failed to charge that the hospital authorities had not exercised due care in the selection of its externe, Dr. Young, or that he was incompetent or that he was an agent or employee of defendant, it was fatally defective, and that therefore the petition to amend was improperly allowed because a petition which fails to set forth a cause of action is no petition at all, and therefore there is nothing to amend. Tremont Lumber Company v. May, 143 La. 389, 78 So. 650, and West Orleans Beach Corporation v. Martinez, 180 La. 31, 156 So. 165.

In answer to this contention it is sufficient to say that the Tremont Lumber Company v. May and West Orleans Beach Corporation v. Martinez cases were expressly overruled in Reeves v. Globe Indemnity Company, 185 La. 42, 168 So. 488, 491.

The plea of prescription is based upon the following language found in Tremont Lumber Company v. May, supra: "Where a cause of action is stated for the first time in a supplemental or amended petition, the filing of the supplemental petition must be considered to be the beginning of the suit; the suit must be considered as dating only from such filing, and not from the filing of the original petition."

■ The supplemental petition in this case having been filed more than one year after the date of the plaintiff's alleged injuries, which form the basis of this suit, her claim is said to be prescribed. The statement in the Tremont Case concerning the effect of the filing of a supplemental petition which, for the first time, sets forth a cause of action, is a corrollary of the holding in this and the West Orleans Beach Corporation Case to the effect that a petition which fails to state a cause of action cannot be amended. See Terzia v. Grand Leader, 176 La. 151, 164, 145 So. 363. In Reeves v. Globe Indemnity Company, supra, it was held that prescription was interrupted by the filing of a petition which failed to state a cause of action: "It is our opinion that the original petition of the plaintiff, even though it be held to imperfectly set forth a cause of action ex de licto, sufficiently apprised the defendant of the nature of the plaintiff's claim or demand, so as to have the effect of interrupting prescription."

The plea of prescription is not well founded and must be overruled.

■ Hospitals with respect to their liability to patients for malpractice have been divided into three classes—public, private eleemosynary, and strictly private. Concerning the first class, it has been universally held that such institutions being created and owned by the state or its subdivisions—state hospitals, city hospitals, reformatories, etc.—are governmental agencies created for the purpose of discharging a public duty, in that they protect society from unfortunate individuals and those deficient in mental capacity or morals; consequently the rules applicable to municipal corporations and public offices in general are applied. The doctrine of respondeat superior has no application to such institutions.

■ With regard to the second class, that is to say, those institutions which are administered by private individuals dispensing public charity, many authorities hold to the doctrine of immunity from liability for tort upon somewhat different grounds, however, chiefly because of what is known as the "trust fund doctrine," to the effect that the funds of such institutions are not to be diverted to other than charitable uses. To this class of hospitals, by what may be said to be the weight of authority, the doctrine of respondeat superior does not apply. The fact that a hospital which has been organized for benevolent and charitable purposes makes a charge for a certain class of its patients on a per diem basis does not affect its character as a charitable institution or take it out of the rule so as to make it liable for negligent acts of its staff, nurses, internes, externes, etc., even as to claims made by pay patients where its entire receipts are devoted to benevolent and charitable purposes. Jordan v. Touro Infirmary, supra.

The third class of hospitals—private ones conducted for profit—are liable to patients and to strangers for the negligence of their servants. Ruling Case Law, Verbo "Hospitals," volume 13, page 957 et seq., Corpus Juris, Verbo "Hospitals," volume 30, page 465 et seq.

We are relieved of the necessity of determining the proper classification of the French Hospital, for the moment at least, because of the fact that one of the codefendants in this case, the United States Fidelity & Guaranty Company, which has undertaken, for a consideration, to underwrite the liability of the French Hospital for claims made against it, such as this one, cannot avail itself of defenses based upon public policy concerning governmental agencies for the discharge of public functions. Rome v. London & Lancashire Indemnity Company (La.App.) 169 So. 132.

Turning our attention to a consideration of the question of negligence on the part of the employees of the French Hospital, the theory of plaintiff's suit is that the externe Young, who administered the hypodermatoclysis, was the servant of the defendant hospital for whose negligence or conduct it is liable. Our attention is called to our opinion in the Jordan Case, wherein we held that "a nurse furnished to patients in a hospital is not its servant, within the meaning of article 2320 of the Civil Code, while performing duties in the operation room under the orders of the surgeon, and therefore the hospital is not responsible for the errors and negligence of such nurse while so engaged." (Syllabus by the Court.) An analogy is sought to be drawn between the externe in this case and the nurse in the Jordan Case. We believe, however, that the Jordan Case is not apposite here, for the reason, in the first place, that the Touro Infirmary was held to be a charitable institution and, in the second place, the facts were different. It was there held that a nurse, though in the regular employ of a hospital and ordinarily its servant, is the servant of the surgeon whom she assists in the performance of an operation pro hac vice, and, where the surgeon has been engaged by a patient, the patient cannot recover for the negligence of the nurse. In other words, it is the temporary service of the nurse in the operating room under the direction and supervision of the surgeon in charge to whose orders and directions she must submit that takes her out of character as an employee of the institution which for the time being has no authority over her or her actions.

The following quotation from Baudry-Lacantinerie (3d Ed.) vol. 15, p. 617, which is found in the Jordan Case, is very significant: "Thus a master is not responsible for the damages caused by the one who is habitually his employee, when the latter, although still in the exercise of his functions and using the things belonging to his master, acts in the premises, under the orders of the third party."

In the case at bar Young had been selected by the French Hospital authorities and was a member of its staff of employees. Dr. Graffagnino, though associated with the French Hospital as one of its medical staff, was engaged as the personal physician of Miss Messina to perform a very serious surgical operation. Upon the completion of the operation, which was about 9:30 in the morning on February 27, 1934, her condition proved to be precarious. She was removed from the operating room and returned to her private room in the hospital, Dr. Graffagnino giving instructions to whom, it is not clear, but perhaps to the nurse who had assisted in the operation, to have a hypodermatoclysis administered every eight hours. The first injection which was given Miss Messina was in the axilla region near her breast about 10:30 the same morning and was without harmful effect. Young did not give this treatment, but he did administer the second hypodermatoclysis in the evening of the same day. Other treatments were given by some other externe or perhaps a nurse all without harmful results; therefore the only treatment given by Dr. Young was the one which resulted in the sores on plaintiff's legs. Dr. Graffagnino was not present when the treatments were administered, and, beyond having ordered them, had nothing whatever to do with their execution. It will be seen that there is no similarity in the facts of this case to the facts in the Jordan Case so as to take Young out of character as a servant of the French Hospital and constitute him, pro hac vice, the servant of Dr. Graffagnino. We conclude on this point that Young was the servant of the French Hospital for whose negligence, so far as its insurer is concerned, it is liable.

The negligence imputed to externe Young consists in the charge that the solution used in the hypodermatoclysis was too hot and, instead of being blood heat or 100 degrees Fahrenheit, as it should have been,

it is claimed that the temperature of the liquid was much higher and sufficient to burn the tender flesh of the plaintiff. Much is made of the fact that several treatments were given plaintiff by others without the development of any abnormal symptoms or unfortunate results, whereas the only treatment given by Young was followed by the development of sores of which the plaintiff complains. We do not believe this fact to be as significant as counsel contends. The record does not indicate that any of the other treatments given the plaintiff were in the same locality as the one administered by Young, and it may be that the flesh in the inner part of the thighs is more susceptible to injury than in the other parts of the body where the other treatments were given, notwithstanding the fact that the thighs are accepted as the proper locality for such treatments according to the best technique. Moreover, it may be that Young's connection with the unsuccessful treatment was a pure coincident. But, whatever be the truth of the matter, this circumstance cannot outweigh the positive testimony concerning the ability and qualifications of externe Young and the care exercised in giving the treatment. There was present at the time besides Young, Mrs. Chassanoil, a nurse. The temperature of the fluid was tested twice before the injection of the fluid, once by Mrs. Chassanoil and once by Young, and once by Young after Miss Messina had complained, following the injection, that the liquid was too hot. The test made here, which is shown to be the standard practice, consisted in allowing some of the fluid to flow out of the needle on the wrist of the party testing it to determine its temperature. Miss Messina herself is the only one who testified that the liquid was too hot. She may have mistaken the sensation created by the failure of the tissues to absorb the liquid, a result which the record shows some time follows hypodermatoclysis, for heat. Young was, according to the uncontradicted testimony in the record, fully competent to administer this treatment. He was then a senior medical student at Louisiana State University, from which institution he graduated with honor four months later. As a matter of fact, this treatment is very frequently given by trained nurses, whose training and experience is not nearly as extensive as that of a senior in a medical college, according to Dr. Graffagnino's opinion.

Dr. Graffagnino testified that the sores on the plaintiff's legs might have been caused by the injection of superheated fluid, but, in his opinion, they were due to necrosis of the. tissues caused by the lowered vitality of the patient.

The case of Foye v. St. Francis Sanitarium, 2 La.App. 305, is remarkably similar to the case at bar. In that case, Miss Lottie Foye sued the St. Francis Sanitarium and Training School for Nurses for $10,000 as damages because of the alleged negligence of a nurse employed in that institution who administered to plaintiff, while a patient in the hospital, a hypodermatoclysis treatment which was "too hot at the time it was administered" and resulted in a severe burn which caused her great pain and left a permanent injury from which she limps. The solution had been injected in the thigh, as in this case. Excerpts from the testimony of three doctors are incorporated in the opinion in that case, Dr. Snelling, under, whose direction the treatment was administered, Dr. Graves and Dr. O'Donnell. Each of these physicians declared that sloughing or abcesses sometime follows hypodermatoclysis. Dr. Graves declared that this sloughing was "due to what we call necrosis; where fluid is put into the tissues and the heart action is rather bad, circulation is bad, and it is not picked up fast enough to be carried away. The tissues don't empty themselves before the blood vessels block up, and we have what is known as cell death, or death of cells in that area, called necrosis. * * *" Dr. O'Donnell testified to the same effect. The opinion of Dr. Graves, which is typical of the quoted testimony of the other two physicians as it appears in the printed volume of our reports, was read to Dr. Graffagnino, and he was asked whether the result of the hypodermatoclysis administered by Young, in this case, could be explained upon the same ground. His reply was in the affirmative, though he frankly admitted that the same result might have followed the introduction into the plaintiff's leg of a superheated fluid and that, in this particular case, he could not say whether the result was due to the fluid being too hot or the tissues being necrosed. The conclusion reached in the Foye Case was that the plaintiff should not recover. We conclude that the plaintiff has failed to prove negligence on the part of the hospital employees. It follows that she cannot recover as against the defendant insurer. Nor can she recover against the codefendant, the French Hospital, for, whether it be a private hospital or an eleemosynary institution, the reasons which prevent her

recovery as against the hospital's insurer are sufficient to defeat her claim against the hospital, whatever be its status.

For the reasons assigned, the judgment appealed from is annulled, avoided, and reversed, and it is now ordered that there be judgment herein in favor of the defendants Societe Francaise De Bienfaissance et D'Assistance Mutuelle de la Nouvelle Orleans and the United States Fidelity and Guaranty Company, dismissing the plaintiff's suit at her cost.

Reversed.

JANVIER, Judge (concurring).

I quite agree with the view of my associate that there is no liability in defendants, and I therefore concur in the decree, which dismisses plaintiff's suit, but I feel that the result could sooner have been reached on the ground that, as a matter of law, there is no liability in a hospital, nor in its insurer, for errors of professional judgment committed by a professional or especially trained employee acting under orders of a physician employed by a patient, if the hospital, in the selection of the especially skilled or trained employee, has exercised due and proper care and precaution.

It must be conceded that in the operation of hospitals it is essential that internes and externes and especially trained nurses be employed. It is universally recognized that these employees are usually selected from those students who, because of their excellence in grades, entitles them to special consideration.

It is also generally known that these employees, though in the general employ of the hospital, are required by the private physicians or surgeons employed by the patients to perform services requiring the exercise of judgment and discretion, which has presumably been developed as the result of special courses of training which the said employees have completed or are completing. If, in the selection of these employees, the hospital authorities have exercised due care, I feel that it would be improper to hold the hospital itself liable for errors of judgment which may be committed by such employees in carrying out the special orders of the private physicians. To hold otherwise is to hold that in such cases hospitals are the guarantors of the perfection of those employees; that they are the insurers of the patients. All that such hospitals should be held to have undertaken in such cases is the duty of providing employees properly trained to perform the particular services which are customarily permitted or required to be performed by such employees. If, in operating such services, such employees commit errors of professional judgment, there should be no liability in the hospitals employing them. Obviously, there is no right in the hospital to direct or to supervise such employees in the exercise of professional judgment. The doctrine, respondeat superior, is founded on the right to direct or supervise. If the act required to be done does not require the exercise of that special skill, or that special discretion, which has supposedly been developed by the training, and is an act which may just as well be done by an unskilled or untrained employee, or if the error or mistake results not from improper exercise of professional judgment, but merely from nonprofessional mistake, then liability should be held to result.

The distinction is well illustrated in Stanley v. Schumpert et al., 117 La. 255, 41 So. 565, 6 L.R.A.(N.S.) 306, 116 Am.St.Rep. 202, 8 Ann.Cas. 1044. There the physician in charge of the patient had ordered that the nurse "drop some solution prepared for the purpose into the plaintiff's eye with an ordinary medicine dropper." Through carelessness, the nurse "did not administer the mild solution prescribed," but "dropped alcohol freely into plaintiff's eye." The court held that the hospital, in whose general employ the nurse was, was responsible. There, the mistake made by the nurse did not result from the improper exercise of professional judgment, but from a purely nonprofessional error. She put into plaintiff's eye something different from that ordered. If the physician had ordered drops of a certain kind to be put into the plaintiff's eye by the nurse and had not specified how many drops were to be applied, or how often the treatment should be afforded the plaintiff and had left these questions to the professional judgment of the nurse and the nurse had erred in applying too many drops, or in applying them too often, we think the result would have been entirely different, for there the mistake, if any, would have resulted from the exercise of improper professional judgment and there should have been no liability in the general employer.

In Jordan v. Touro Infirmary (La.App.) 123 So. 726, the nurse was ordered by the physician to apply hot water bottles to the patient. The temperature to which the wa-

ter in the bottle should have been heated was left to the professional judgment and discretion of the nurse. Though the court did not decide the case on that ground, it may well have been held that there was no liability in the hospital for the mistake of the nurse in applying the water too hot, since that was not a nonprofessional error, but was a professional error, or an improper exercise of professional judgment.

If a doctor determines that a patient should be given strychnine treatment and instructs a nurse or an interne or an externe to administer strychnine, and leaves to such employee the question of determining how often the treatment shall be administered and the employee, supposedly with sufficient skill to determine this, administers the treatment too often, there should be no liability in the general employer, the hospital. But if, under such circumstances, the supposedly skilled employee, instead of using strychnine, makes use of some entirely different drug as the result of nonprofessional error, then the hospital should be liable for this nonprofessional error.

In the case at bar the worst that can be said is that it is found that an externe, chosen because of his special skill and training, injected the fluid when it was at too high a temperature. If so, this was not a nonprofessional error, but was a professional error resulting from a mistake in professional judgment as to how hot such fluid should be under the circumstances surrounding that particular situation. There should be no liability in the hospital. However, if the externe, in injecting the fluid, had not used the fluid directed, but, through nonprofessional mistake, had injected some poisonous or otherwise improper fluid, there should then be liability, because theoretically the hospital had the right to say to the externe, "You are not administering the drug ordered, but are injecting something else." The hospital would have had this right, but it would not have the right to say to the externe, "You are administering the treatment directed, but you are administering it at too high a temperature." That is a matter for professional judgment, and interference with the exercise of such professional judgment would, in the great majority of cases, work havoc with the patients.

For these reasons, as well as for the reasons given by my associate in his finding on the facts, I concur in the decree.

McCALEB, Judge (concurring).

I cannot agree with the opinion of my associate that the externe Young was free from negligence in the case at bar. A reading of the record reveals that, after Miss Messina was removed from the hospital room, her condition was not what it should have been, and that her physician, Dr. Graffagnino, ordered the administration to her of hypodermatoclyses every eight hours. The administration of this treatment is said, by Dr. Kahle, who testified for the plaintiff, to be a therapeutic measure, which means that it is the application of a particular remedy for one who is ill. Dr. Graffagnino testified that a hypodermatoclysis is nothing more than the use of either normal salt water and saline solution of plain tap water or occasionally glucose administered under the skin to a patient who is not able to retain food either by way of mouth or through the rectum. The purpose of the treatment is to build up the patient's resistance.

Miss Messina testified that at the time she was administered the hypodermatoclysis by Dr. Young, she complained of the fact that the fluid was burning her. Dr. Young and Mrs. Chassanoil, an attending nurse, corroborate her statement, and Dr. Young says that he immediately tested the fluid and found that it was not too hot. It is singular, however, that, although the plaintiff was administered some seven or eight treatments, the only one which seemed to have a deleterious effect was the hypodermatoclysis performed by Dr. Young.

I do not find that the testimony of Dr. Graffagnino is helpful to the defendants. His evidence shows that he is of the opinion that the injuries to plaintiff resulting from the hypodermatoclysis are due, either because the fluid was too hot, or because the plaintiff's vitality was so low that the injection of the fluid did not penetrate the tissue but formed a necrosis or sloughing off of tissue at the point of insertion. He does not attempt to say that the fluid given was not too warm because he does not know whether such was the case.

The defense, as I understand it, is that the fluid was not too hot, but against the statement of Dr. Young that he tested the fluid and found it to be all right, is the uncontradicted statement of Miss Messina, corroborated by the attending nurse and Dr. Young, that when the fluid was injected she complained that it was burning her, and

also the unexplained physical fact that of the six or seven treatments administered to her only the one which was given by Dr. Young had the effect of producing her injuries. Accepting the opinion of Dr. Graffagnino that the injuries which plaintiff has suffered may be caused by either excessive heat of the fluid or a necrosis of tissue, it must also be remembered that this physician testified that Miss Messina was given a hypodermatoclysis immediately after the operation which produced no ill effects. He further testified that her vitality, at the time the hypodermatoclysis was administered by Dr. Young, was somewhat better. Therefore, it seems to me, if Miss Messina's vitality was better at the time the hypodermatoclysis was administered by Dr. Young than it was immediately after the operation when the first of these treatments was given, the chances of necrosis, as a result of the treatment, would be decidedly lessened.

However, while I disagree with the finding of my associate on the question regarding the negligence of Dr. Young, I am of the opinion that the correct result is reached in dismissing the plaintiff's suit. It appears to me that the two most important questions in this case, assuming that Dr. Young was negligent, are: First, whether he was the employee of the hospital in so far as the administration of the hypodermatoclysis is concerned, and, second, if he was the employee of the hospital, does the doctrine of respondeat superior apply?

On the first question, regarding the employment of Dr. Young, I am of the opinion that he was not the employee of the hospital for the performance of the treatment which is the subject of this complaint.

This suit ex delicto is brought against the French Hospital for injuries received by the plaintiff growing out of an alleged breach of contract. The plaintiff, being ill, entered into a verbal contract with the hospital whereby the hospital agreed, for a consideration, to supply her with a room, meals, and nursing facilities during her stay there. I do not believe it was the intention of the parties, at the time the contract was entered into, that the hospital should provide therapeutic measures. The extent of its agreement was to supply the plaintiff with the ordinary nursing facilities of the institution, and it warranted that its employees and agents were qualified to perform such nursing as was necessary to adequately care for the plaintiff during her stay.

Miss Messina had employed Dr. Graffagnino to perform an operation upon her. After the operation, her vitality was so low that the doctor found that the administration of hypodermatoclyses was imperative and necessary for her well being. He instructed and ordered Dr. Young to give her the hypodermatoclysis, which was administered by Dr. Young some eight or ten hours after the operation. While Dr. Young was in the regular employ of the hospital as an externe, he became the agent and employee of Dr. Graffagnino and not of the hospital for the purpose of administering this particular treatment.

My opinion in this respect is affirmed and fortified by the Oklahoma Supreme Court in the case of Aderhold et al. v. Bertha E. Bishop, 94 Okl. 203, 221 P. 752, 754, and also reported in 60 A.L.R. 137.

In that case, the plaintiff had engaged the services of a firm of surgeons to operate on her for goiter. The operation was performed at the El Reno Sanitarium, which was managed and controlled by the defendants in suit. It appears that, while the operation was being performed, her feet and ankles were severely burned as result of the negligence of the attendant nurse in the operating room, who allowed hot water to drop thereon while assisting the physicians in the performance of the operation. It was admitted by the plaintiff that the surgeons themselves were not guilty of any negligence. She sued the two doctors who performed the operation, because of the negligence of the nurse, and the court held that, while the nurse was a regular employee of the El Reno Sanitarium, still, for the purpose of the operation, she became the agent and servant of the doctors performing the surgery and that while she was under their employ the physicians became liable for any fault or negligence on her part. The court said:

"In the instant case the plaintiff went to the El Reno Sanitarium for an operation. The operating surgeons, the defendants in this case, went there to perform the operation. In the performance of the operation, the hospital permitted and the surgeons *consented to use its general employees to assist the surgeons in the performance of the operation.* While the head nurse and her assistants were the general employees of the El Reno Sanitarium, they were nevertheless, during the time required for the actual operation, under the direction and supervision of the operating surgeons, *and were the servants of the op-*

*erating surgeons in respect to such services as were rendered by them in the performance of the operation, and for any negligence on the part of such employees in the performance of such services the operating surgeons are liable.*

"An examination of the authorities discloses to our satisfaction that the true test of the existence of the relation of master and servant in a given case does not depend upon whether the servant was in the general employ of the master, *but upon whether the master actually exercises supervision and control over the servant during the time he uses such servant. A general master may loan the service of his employee to another for a specified purpose and for a short period of time, in which case the individual to whom such general servants are let is the master, and responsible for their neligent acts so long as he exercises actual supervision over them.*

"In Wolfe v. Mosler Safe Co., 139 App. Div. 848, 124 N.Y.S. 541, it is said that a third person to whom servants of a general master have been temporarily loaned, with their consent, is for the time being their master, he having for the time being control of the servant. Chicago, R. I. & P. R. Co. v. Stepp, 90 C.C.A. 431, 164 F. 785, 22 L.R.A.(N.S.) 350; Koenitsky v. Matthews, 64 Misc. 167, 118 N.Y.S. 366; Wyckoff v. Wunder, 107 Minn. 119, 119 N.W. 655; Messmer v. Bell & C. Co., 133 Ky. 19, 117 S.W. 346, 19 Ann.Cas. 1.

"In Western U. Teleg. Co. v. Rust, 55 Tex.Civ.App. 359, 120 S.W. 249, it is said: 'Where a servant has two masters, a general and a special one, *the latter, if having the power of direction or control, is the one responsible for the servant's negligence.*'

"In Brady v. Chicago & G. W. R. Co., 52 C.C.A. 48, 114 F. 100, 57 L.R.A. 712 [11 Am.Neg.Rep. 546], it is said: 'The power of control is the test of liability, under the maxim respondeat superior. *If the master cannot command the alleged servant, then the acts of the latter are not his, and he is not responsible for them. If the principal cannot control and direct the alleged agent, then he is not his agent.*'

" 'The liability of masters for the acts or omission of their servants weighs heavily on them; but the hardship would be at least equal if the master were not liable; and it would be attended with injustice too. If the master be morally innocent, so must the injured party be also—and, if two in-nocent persons, surely he should suffer through whom it is by the employment of another the mischief has been occasioned.' Dansey v. Richardson, 3 El. & Bl. 144–161 [118 Eng.Reprint, 1095]." (Italics ours.)

I have quoted at length from this decision because I consider it to be a profound and able analysis of the problem to be solved in the case at bar.

The same principle of law announced in the Aderhold Case, supra, is ably discussed by Judge Claiborne as organ of this court in the case of Jordan v. Touro Infirmary, 123 So. 726. In that case, we found that the nurse, who was guilty of negligence resulting in injuries to the plaintiff, was the agent of the doctor and not of the Touro Infirmary.

My associate seeks to distinguish the Jordan Case from the case at bar on the ground that the injuries which were inflicted in this case did not occur in the operating room and that Dr. Graffagnino, who ordered the treatment to be administered, was not present at the time it was given and had nothing whatever to do with the execution of his own order. I fail to follow this line of reasoning, as I can see no distinction between the supervision and control of the employees of the doctor where the orders are given in the operating room, or his supervision and control of them where he orders the treatment to be performed after the operation and out of his presence. The fact is that he gives the orders, and, in so doing, he thereby constitutes the party obeying his instructions as his agent and employee for their execution. A distinction should be drawn between a case where the instructions of the attending physician relate to the performance of usual nursing measures, which the hospital, by its contract with the patient, has contracted to provide, and a case, such as this one, where the physician has ordered the administration of a particular medical measure, to be performed by one who has the skill and training to execute the order. In the former case the service to be rendered comes within the purview of the hospital's contract, while in the latter it does not. In one case the performance of strictly nursing services is rendered, while in the other case the execution of a medical remedy is paramount.

It seems certain that the duty of a surgeon to his patient does not end in the operating room. In my opinion, it is also his duty to administer such treatment as

is necessary until such time as it is ascertained that the patient is out of danger. For, if it were otherwise, doctors could shirk all responsibility immediately after the operation was performed and place upon the hospital the onus of treating the patient until full recovery.

The evidence in this case shows that, because of Miss Messina's weakened condition, therapeutic measures became advisable and necessary after she was taken from the operating room. In accordance with his duty to his patient, Dr. Graffagnino ordered hypodermatoclyses to be administered to her at regular intervals. He appointed and constituted Dr. Young, whom he believed was qualified and competent, to execute his orders. Under the decision in the Jordan Case, Dr. Young became the agent of Dr. Graffagnino and was accountable to Dr. Graffagnino and not to the defendant hospital for the manner and means used by him in the performance of Dr. Graffagnino's instructions.

Inasmuch as the defendant hospital was not the master of Dr. Young at the time he negligently injured the patient, her suit should be dismissed.

Even assuming, for the sake of discussion, that Dr. Young was the employee of the hospital to perform the hypodermatoclysis upon the plaintiff, I am of the opinion that the relationship of master and servant does not exist in this case for the reasons fully set forth by Judge Janvier in his concurring opinion herein.

I confess that a review of authorities with regard to the liability of hospitals for the negligence of their nurses and employees is not very helpful. This is because of the fact that in most of those cases the question of liability vel non has turned on whether or not the defendant hospital is a charitable institution, which is, of course, eliminated in this case under our decision in Rome v. London & Lancashire Indemnity Co., 169 So. 132.

On the other hand, a reading of the Jordan Case reveals that we held there that the doctrine of respondeat superior is without application to a nurse employed by a hospital. The first defense, invoked by the Touro Infirmary in that case, was "that the nurse was not the servant of the defendant within the meaning of article 2320, C.C." In deciding this question in favor of the defendant, Judge Claiborne discusses the evidence with reference to the nurse's previous ability, training, and skill,

and reviews all pertinent authorities under the civil and common law. He further distinguishes the case from that of Stanley v. Schumpert, 117 La. 255, 41 So. 565, 6 L.R.A.(N.S.) 306, 116 Am.St.Rep. 202, 8 Ann.Cas. 1044 (relied upon by the plaintiff in the case at bar), with the observation that: "In that case there was no evidence that the nurse was competent or graduated, nor that the defendant did not have the direction and control of the nurse at the time she inflicted the injury."

Here, it would require a fictitious stretch of reasoning to hold that the hospital had "supervision and control" over the skill possessed by Dr. Young in the performance of a medical treatment. For his errors of judgment, the hospital is not responsible, unless it did not use due care in selecting him as its employee.

I am authorized to say that Judge JANVIER concurs in my view that Dr. Young was the agent of Dr. Graffagnino in the case at bar and not the agent of the hospital.

For these reasons, I concur in the decree.

