## LUSK v. UNITED STATES FIDELITY & GUARANTY CO.

### No. 17069.

Court of Appeal of Louisiana. Orleans.
Jan. 27, 1941.

Gordon Boswell and A. M. Suthon, both of New Orleans, for appellant.

Spearing, McClendon & McCabe, of New Orleans, for appellee.

McCALEB, Judge.

The plaintiff, Mrs. Catherine Suzette, widow of John Lusk, brought this suit against the defendant, United States Fidelity & Guaranty Company, the public liability insurer of Touro Infirmary Association, to recover damages for the personal injuries she sustained on May 15, 1934, when she fell on the floor of the corridor situated on the second story of the building owned and operated by the infirmary. The Touro Infirmary has not been made a party to the action and plaintiff is proceeding directly against its insurer by authority of the provisions of Act 55 of 1930.

The pertinent allegations of plaintiff's petition are that, on May 15, 1934, she visited Touro Infirmary in company with a sick friend; that, after leaving the hospital ward, to which her friend had been assigned, she fell to the floor of the corridor of the second story of the infirmary building; that the fall she sustained was due to the unusual, unsafe and unexpected slipperiness of the corridor floor; that she had no previous warning of its dangerous condition and that the Touro Infirmary was negligent in that its employees had waxed the floor but had failed to rub it down which caused it to be exceedingly slippery and unsafe.

It is further averred that the defendant, United States Fidelity & Guaranty Company, had issued to Touro Infirmary a certain insurance policy known as an owners, landlords and tenants' public liability policy, which policy was in full force and effect at the time of the accident, whereby the defendant had agreed to pay on behalf of the infirmary all claims for damages for which it was legally liable arising from bodily injury accidentally suffered by any person on its premises and caused by its ownership, maintenance or use of the premises or by reason of the conduct of its business; that the personal injuries suffered by plaintiff are directly attributable to the negligence of the infirmary and that therefore the defendant, as its insurer, is liable to her.

The defendant admits the happening of the accident and that it is the insurer of the Touro Infirmary. It denies, however, any and all responsibility to the plaintiff on the following grounds: (1) that Touro Infirmary is a charitable institution and cannot be held liable for the torts of its agents and servants and that therefore the defendant, as its insurer against legal liability, is likewise not responsible; (2) that the accident to plaintiff was not caused through the negligence of the Touro Infirmary, its agents or employees; (3) alternatively, that, if it should be found that Touro Infirmary was at fault in any particular, then plaintiff is nevertheless not entitled to redress for the reason that she was merely a licensee and not an invitee upon the infirmary's premises and (4) alternatively, that plaintiff was guilty of contributory negligence barring her recovery.

After a trial of the case on the foregoing issues, there was judgment in favor of the defendant, dismissing plaintiff's suit. Wherefore this appeal.

The first contention of the defendant—that it is not responsible as the insurer of Touro Infirmary because the infirmary is a charitable institution and as such is not liable for the torts of its agents and servants—is not tenable. The doctrine of immunity of a charitable institution, which is founded upon considerations of public policy, is applicable only in cases where the injured person is shown to be a recipient of the benefits of the charity. See Bougon v. Volunteers of America, La.App., 151 So. 797. The plaintiff in this case was merely visiting a sick friend who was confined in the hospital and she was in no sense a beneficiary of the institution. Moreover, even if she had been, the defense interposed is one which is personal to the hospital itself and cannot be availed of by the defendant insurance company. See Messina v. Societe Francaise De Bienfassance, etc., La.App., 170 So. 801, and Rome v. London & Lancashire Indemnity Co., La.App., 169 So. 132.

Disposal of the foregoing point leads us to a discussion of the facts of the case.

In support of her demand, plaintiff testified as follows: That about 9 a. m. on the day of the accident, she, in company with a sick friend, Mrs. Catherine Green, and the latter's niece and nephew, Miss Bernadine Murphy and Louis Schneider, went to the Touro Infirmary for the purpose of entering Mrs. Green as a patient of the institution; that, upon their arrival, they were met by an attendant of the infirmary who put Mrs. Green in a rolling chair and took her to Ward Z, which is situated on the second floor of the main building; that she accompanied Mrs. Green to the ward and assisted in undressing and preparing her for bed; that, after she had put Mrs. Green to bed, she walked out of the ward to the corridor where she was joined by Mr. Schneider and that, after she had taken two or three steps from the door which leads into the corridor, she slipped upon the floor and broke her arm.

Plaintiff's testimony, with respect to the manner in which the accident happened, is corroborated by the statement of Mr. Schneider and Miss Murphy. In addition, Miss Murphy stated that, shortly after the plaintiff slipped and fell, she also sustained a fall very near to the point on the corridor floor where the plaintiff had been injured.

Plaintiff and her witnesses further say that the floor was very slippery and that none of them was notified of the fact that it was in such condition although Mr. Schneider admits that, just after plaintiff fell, he noticed a sign warning that the floor was slippery and that this sign had been posted near the door of one of the wards adjacent to the corridor.

The evidence submitted by the defendant portrays an entirely different picture of the situation obtaining in and about the corridor at the time of plaintiff's fall. Defendant's witnesses not only assert that there were at least five warning signs posted in the corridor, which advised of the slipperiness of the floor, but that, at the time of plaintiff's fall, one of the employees of the hospital was actually engaged in waxing and polishing the floors with a large machine.

Gus Tavis, a colored man who has been employed at Touro Infirmary for a number of years as a floor cleaner, testified that, on the morning of the accident, he had been directed to wash, wax and polish the floor of the corridor of the second floor of the main building; that the floor of the corridor is covered with a material known as Stedman rubberized tile; that, in cleaning and polishing the floor, he first washes it with soap and water and then, after it dries, he waxes it with a large machine which is operated by electricity; that the wax is placed on the floor in liquid form by the machine and that, after this is done, the machine is run over it and polishes it.

He further says that, when he is polishing the floors of the hospital, he places a number of wooden signs in and about the vicinity in which the work is being done; that these signs are about three feet in height and bear the words "Warning Slippery Floor"; that, on the day of the accident, he placed six of these signs in and about the corridor where the work was being done at the following locations: A sign at each of the two entrances to the corridor; a sign in front of each of the three wards (X Y Z) which are adjacent to the corridor and the other sign was placed by the polishing machine and was moved along with the machine as the work was being done. This witness further testified that he was operating the polishing machine at the time the plaintiff came out of Ward Z; that he gave her personal warning respecting the slipperiness of the floor and that, when she fell, he helped to pick her up.

Tavis' testimony, with respect to the fact that he was polishing the floors of the corridor at the time the accident occurred and that the warning signs had been posted, is corroborated by the evidence of Miss Beatrice Mills, who was the floor nurse on duty at the time of the accident. Miss Mills also says that she and a Miss Hernandez assisted in helping the plaintiff to her feet after she fell.

In addition to the foregoing proof, the defendant offered the evidence of Mr. Harmon P. Agnew, who stated that he is the vice-president of Nachery Building Supply Company; that his company is engaged in the business of selling and installing composition flooring for public buildings; that the Stedman rubberized tile flooring in Touro Infirmary was sold and installed by his company and that this type of flooring is of standard quality and is used by a number of hospitals and other public institutions in the City of New Orleans. Mr. Agnew further said that, in order to preserve cleanliness in hospitals, it

is recommended by the manufacturers of Stedman rubberized tile that the flooring be cleaned, waxed and polished at regular intervals; that the process used in performing this work is to wash the floor with liquid soap and water and after it dries to use a machine of the type employed by Touro Infirmary, which automatically dispels liquid wax upon the floor and that, after the wax has dried, it is polished by the brushes of the machine. The witness also stated that, when the floor is being waxed and polished in the manner above outlined, it is no more slippery than a wet asphalt street and that anyone may walk thereon in perfect safety provided he is aware of the fact that, while it is being waxed, the floor is more slippery than it is in its finished state.

It is further shown by the testimony of Dr. A. J. Hockett, superintendent of Touro Infirmary, that it was essential to keep the floors of the institution clean; that the most convenient time to begin the work was about seven in the morning after breakfast had been served and when the rest of the patients would be the least likely to be disturbed and that, during those hours, no visitors were permitted.

In view of the evidence submitted at the trial, we experience no difficulty in resolving that the case was correctly decided by the court below. The law imposed upon Touro Infirmary a duty of ordinary care to keep its floors in a reasonably safe condition so that plaintiff (assuming that she was an invitee) and others rightfully upon the premises could walk over them with safety. See Greeves v. S. H. Kress & Co., La.App., 198 So. 171, and cases there cited. This obligation has, we think, been fulfilled.

The evidence of the defendant reveals that the type of flooring used by Touro Infirmary was of standard quality and that no unusual or dangerous substance was placed thereon which rendered it unsafe to walk upon. It is obvious, however, that it was necessary, in the usual course of its business and in the aid of sanitation and cleanliness, that the hospital clean and polish its floor at regular intervals and that, while the cleaning and polishing work was being performed, the floor was more slippery than it was in its ordinary state. It was for this reason that the infirmary, acting as a prudent administrator of its own property, required its employee to post signs to warn all persons to walk cautiously upon the floor when the cleaning and polishing work was being done. The testimony further shows that, while the floor was more slippery than usual when it was being washed and polished, it was not particularly dangerous and that a person could walk safely thereon with the exercise of care. The hours selected by the infirmary for performing the cleaning work cannot be said to be unreasonable and it is to be recognized that such work could not be done in a hospital at a time when the building was not in use.

It is true that the plaintiff and her witnesses deny that they observed the warning signs or that they saw Tavis operating the polishing machine at the time plaintiff fell, but this negative evidence is insufficient to overcome the positive statements of defendant's witnesses that the signs were there and that they were displayed in prominent places where anyone could see them. It may be that plaintiff did not, in fact, see these signs but her failure in this respect cannot be attributed to any dereliction or lack of care on the part of Touro Infirmary for, had she been attentive or vigilant, she would have been bound to notice the warning.

Counsel for plaintiff maintain that the warning signs were not sufficient notice to plaintiff and they argue that personal notice should have been given or that the corridor in which the work was being performed should have been roped off. This contention fails to impress us. It would be unreasonable to say that the hospital should have anticipated that persons using its premises would fail to notice the signs, which were prominently displayed. There was nothing so unusual or dangerous about the cleaning of a floor which should require foolproof precautions. The evidence shows that, when the work was being done, the floors were not slippery to the extent that a person exercising due care could not walk upon them with perfect safety. Under such circumstances, the posting of warning signs was wholly sufficient and constituted a full compliance by the hospital of its obligation to plaintiff.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.